**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**GARY METZGAR, et al.,**

                                   **Plaintiffs,**                    **13-CV-0085A(Sr)**

**v.**


**U.A. PLUMBERS & STEAMFITTERS**
**LOCAL 22 PENSION FUND, et al.,**

                              **Defendants**

_____


## <u>REPORT, RECOMMENDATION AND ORDER</u>

        This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #16.


        Currently before the Court is defendants' motion to dismiss, pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, the first cause of action alleging

violation of section 204(g) of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1054(g).  Dkt. #13.  For the following reasons, it is recommended that

defendants' motion be denied.


## <u>BACKGROUND</u>

        Plaintiffs are seven individuals who began receiving early retirement

benefits under the U.A. Plumbers & Steamfitters Local No. 22 Pension Fund Restated

Plan of Benefits ("Plan"), between 2002 and 2008.  Dkt. #1, ¶¶ 6-12.  Shortly after

retiring, plaintiffs commenced non-disqualifying employment by working in non-union, non-Plan based managerial positions in the construction industry.  Dkt. #1 ¶¶ 6-12. The complaint specifically alleges that each of the plaintiffs "affirmatively disclosed to [d]efendants, whether verbally or in writing, their intention to continue post-retirement employment, pursuant to the Non-Disqualifying Employment exception in Section 5.3 of the Plan."  Dkt. #1, ¶ 23.

In December of 2011, "[d]efendants unilaterally determined that each of the [p]laintiffs had not, in fact, retired from the Plan since each Plaintiff resumed employment as a project manager, manager, and/or estimator shortly after his effective retirement date."  Dkt. #1, ¶ 22.  "Specifically, [d]efendants determined that [p]laintiffs had not separated from work for a long enough period of time so as to constitute a retirement, despite the fact that each [p]laintiff intended to and did separate from Plan based work and only recommenced employment in non-Plan based work."  Dkt. #1, ¶ 25.

Some of the plaintiffs chose to discontinue their employment and continue receiving early retirement benefits while others continued their employment and had their early retirement benefits terminated as of February 1, 2012.  Dkt. #1.  When some of the plaintiffs who chose to continue their employment subsequently retired, their retirement was pursuant to an amended pension plan.  Dkt. #1.  Those plaintiffs who continue to work in non-union, non-Plan based positions in the construction industry will also retire pursuant to an amended pension plan.  Dkt. #1.

-2-

The U.A. Plumbers & Steamfitters Local 22 Pension Fund Agreement and

Declaration of Trust ("Trust Agreement"), places "full discretion and authority to adopt a

Plan of Benefits which includes the eligibility requirements, type, amount and duration

of benefits that are to be provided" and "to adopt rules stating the eligibility

requirements which will be binding on the Union, Employers, Employees, Beneficiaries

and dependents and any other persons making claims."  Dkt. #13-6, p.28.  The

Trustees "have full and exclusive discretionary authority to determine all questions of

coverage and eligibility," as well as "to interpret the provisions of [the] Trust Agreement

and Plan of Benefits, and the terms used in these documents and any rules and

regulations issued in connection with these documents."  Dkt. #13-6, pp.13-14.  "The

Trust [Agreement] and the Plan of Benefits adopted by the Trustees will be structured

and operated to qualify for approval by the Internal Revenue Service as a tax exempt

Trust and Plan to ensure that the Employer contributions to the Fund are proper

deductions for income tax purposes.  Dkt. #13-6, p.29.   "Any change or modification of

the Plan of Benefits made by the Trustees will be stated in writing."  Dkt. #13-6, p.28.


Section 5.1 of the Plan provides the amount of pension for normal, early,

special early and disability retirement. Dkt. #13-5, pp.21-28.  Section 5.2 of the Plan, as

relevant to the instant case, provides that payment of benefits from the Plan to a

Participant shall not begin later than the 60th day in which the last of the following

occurs:

  (a)   The Participant attains Normal Retirement Date;

  (b)   The occurrence of the 10th anniversary of the Plan Year in which
        the Participant commenced participation in the Plan; or

> (c)   The Participant terminates service with all of the participating
> Employers.

Dkt. #13-5, p.28.  Employer is defined as, *inter alia*, "a signatory to a Collective

Bargaining Agreement with the Union requiring contributions to this Fund."  Dkt. #13-5,

p.6.  Section 5.3 of the Plan provides for the suspension of benefits

> for any month during a six month period beginning January 1
> and ending June 30, or beginning July 1 and ending
> December 31, in which the total hours he worked or was
> paid for work in Disqualifying Employment exceeded 120 . . .
> Notwithstanding the foregoing, a Participant who has
> attained age 65 shall be entitled to work or be paid for work
> in Disqualifying Employment for up to 40 hours in a month
> without the suspension of his monthly benefit.  "Disqualifying
> Employment" means employment or self-employment that is
> (A) in an industry covered by the Plan when the Participant's
> pension payments began, (b) in the geographic area
> covered by the Plan when the Participant's pension
> payments began, and (C) in any occupation in which the
> Participant worked under the Plan at any time or any
> occupation covered by the Plan at the time the Participant's
> pension payments began.  However, employment in a
> managerial position, project manager or estimator for an
> Employer shall not be deemed "Disqualifying Employment."
> Notwithstanding the above, effective June 1, 1989, a
> Participant shall not be subject to the provisions of this
> Section 3 after May 31 of the year following the year in
> which the Participant attains age 70½, regardless of
> employment status.

Dkt. #13-5, pp.28-29.  "Industry covered by the Plan" is defined as "the steamfitter or

plumbing industry and other industry in which Participants covered by the Plan were

employed when the Participant's pension began or, but for suspension under this

Article, would have begun."  Dkt. #13-5, p.29.  A participant may ask, and the Plan shall

inform a participant of its determination whether a particular employment will be

disqualifying.  Dkt. #13-5, p.30.

Effective February 10, 2012, the Fourth Amendment to the Plan adds

Section 5.5, which reads, as relevant to the instant matter:

> <u>Section 5.5</u>    <u>Retirement</u>
>
> (a)    <u>General Rule</u>.  To be considered retired, a
> Participant must have separated from service
> with any and all Contributing Employers with
> the intent that such separation be
> permanent. . . .
>
> (b)    <u>Exceptions</u>.
> A Participant may retire and begin receiving a
> monthly pension without a separation from
> service if he has attained Normal Retirement
> Age under the Plan.  In addition, a Participant
> who has separated from his previous
> employment, as defined in paragraph (a), shall
> be considered retired notwithstanding
> subsequent reemployment with a Contributing
> Employer within the guidelines of the
> Suspension of Benefits provisions of Section
> 5.3.  . . .

Dkt. #13-5, p.80.  The Fourth Amendment to the Plan also adds the following sentences

to Section 5.3 of the Plan:

> Effective as to that portion of a Participant's Accrued Benefit
> attributable to Credited Service earned on or after May 1,
> 2012, employment in a managerial position, project manager
> or estimator for an Employer will be deemed "Disqualifying
> Employment."
>
> * * *
>
> Effective January 1, 2012, and notwithstanding the
> foregoing, a Participant who has attained age 65 shall be
> entitled to work or be paid for work in Disqualifying
> Employment without the suspension of his monthly benefit.

Dkt. #11-5, pp.80-81.

## DISCUSSION AND ANALYSIS

Defendants argue that the first cause of action fails to state a claim because early retirement benefits had not accrued in plaintiffs' favor as they never retired and because the Plan was never amended to decrease any accrued benefit. Dkt. #13, p.9.  More specifically, defendants argue that plaintiffs never qualified for retirement benefits because they never terminated service with their participating employer as required pursuant to Section 5.2(c) of the Plan and that their interpretation and enforcement of the existing plan language is not an amendment.  Dkt. #13, pp.10-11.  In other words, defendants argue that they were simply correcting an error, not amending the Plan.  Dkt. #13, p.11.

Plaintiffs argue that they have plausibly alleged that they were entitled to receive retirement benefits pursuant to the Plan and that the benefit was diminished by an amendment to the Plan, which is all that is required at this stage of the proceedings. Dkt. #18, p.2.  Plaintiffs argue that defendants cannot claim that plaintiffs were not eligible for retirement benefits when they approved such benefits with full knowledge of plaintiffs' plans to engage in non-disqualifying employment. Dkt. #18, p.8.  Moreover, plaintiffs argue that it is irrelevant that the formal amendment of the Plan occurred after defendants reduced plaintiffs' benefits in accordance with the terms of that amendment. Dkt. #18, pp.8-10.

Defendants reply that their motion must be granted because plaintiffs have failed to allege entitlement to the benefits they seek because they have failed to

allege that plaintiffs intended to permanently separate from their employment as required by the Plan.  Dkt. #19, p.4.  Defendants argue that there is no legal basis for plaintiffs' argument that transferring from Plan-based employment to non-Plan employment with the same employer constitutes retirement.  Dkt. #19, p.6.

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference."  *Broder v.*

*Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  "If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations." *Olin Corp. v. E.I. Dupont De Nemours and Corp.*, No. 05-CV-100S(Sc), 2006 WL 839415 (W.D.N.Y. March 27, 2006).  As plaintiffs' complaint references and relies upon the pension benefits available pursuant to the Trust Agreement and Plan of Benefits, they may be considered by the Court in deciding defendants' motion to dismiss.

The first cause of action asserts that the determination that plaintiffs were not eligible for early retirement benefits is a violation of 29 U.S.C. § 1054(g), commonly referred to as the "anti-cutback rule," which provides, in relevant part, that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."  The statute specifically incorporates early retirement benefits.  See 29 U.S.C. § 1054(g) (plan amendment which has the effect of eliminating or reducing an early retirement benefit attributable to service before the amendment shall be treated as reducing accrued benefits).

In assessing whether an amendment has eliminated or reduced an early retirement benefit that was earned by service before the amendment was passed, the United States Supreme Court has recognized that "[a] participant's benefits cannot be understood without reference to the conditions imposed on receiving those benefits, and an amendment placing materially greater restrictions on the receipt of the benefit

-8-

'reduces' the benefit just as surely as a decrease in the size of the monthly benefit

payment." *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004).  In

*Heinz*, the Supreme Court determined that the Pension Fund's amendment of the Plan

to eliminate the exception for employment in a supervisory capacity from the definition

of disqualifying employment in a suspension of benefits provision subsequent to Heinz's

retirement violated the anti-cutback rule, explaining:

> Heinz worked and accrued retirement benefits under a plan
> with terms allowing him to supplement retirement income by
> certain employment, and he was being reasonable if he
> relied on those terms in planning his retirement.  The 1998
> amendment undercut any such reliance, paying retirement
> income only if he accepted a substantial curtailment of his
> opportunity to do the kind of work he knew.  We simply do
> not see how, in any practical sense, this change of terms
> could not be viewed as shrinking the value of Heinz's
> pension rights and reducing his promised benefits.

*Id.* at 744-45.


In the instant case, plaintiffs allege that subsequent to their retirement, a

new condition was imposed upon their eligibility for retirement, *to wit*, the requirement

that plaintiffs intended that their separation from service with any employer be

permanent, and that the application of this condition resulted in either the suspension of

their retirement benefits or the suspension of their ability to engage in supplemental

employment.  This is sufficient to plausibly allege the essential elements of an anti-

cutback rule, *to wit*, a plan amendment and a reduction in accrued benefits.  *Dooley v.*

*American Airlines, Inc.*, 797 F.2d 1447, 1451 (7th Cir, 1986), *cert. denied*, 479 U.S. 1032

(1987).  The allegation that plaintiffs affirmatively disclosed to defendants their intent to

continue post-retirement employment renders suspect defendants' attempts to characterize their actions as correcting an error with respect to the validity of plaintiffs' retirements, the last of which occurred more than three years earlier.  Similarly, the formal amendment of the Plan ten days after plaintiffs' benefits were reduced by the suspension of retirement benefits or the termination of post-retirement employment renders suspect defendants' claim that they were exercising their discretion to apply existing Plan language rather than amending the Plan. *See Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 182 (2d Cir.) ("amendment" contemplates that the actual terms of the plan changed in some way, not that an administrator made an incorrect factual determination), *cert. denied*, __ U.S. __, 134 S.Ct. 241 (2013); *Krumme v. Westpoint Stevens, Inc.*, 143 F.3d. 71, 85 (2d Cir. 1998) (amendment does not include valid exercise of a provision already incorporated into the plan) (collecting cases).

## CONCLUSION

Based on the foregoing, it is recommended that defendants' motion to dismiss (Dkt. #16), be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:     Buffalo, New York**
**February 4, 2014**

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**