UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARY METZGAR, RICHARD MUELLER,
KEVIN REAGAN, RONALD REAGAN,
CHARLES PUGLIS, SHERWOOD NOBLE,
DANIEL O'CALLAGHAN,

                      Plaintiffs,

v.

U.A. PLUMBERS AND STEAMFITTERS LOCAL
  NO. 22 PENSION FUND,
BOARD OF TRUSTEES OF U.A. PLUMBERS AND
  STEAMFITTERS LOCAL NO. 22 PENSION FUND, and
DEBRA KOROPOLINSKI, in her capacity as Plan
  Administrator, for the U.A. Plumbers and Steamfitters
  Local 22 Pension Fund,

                      Defendants.

DECISION
and
ORDER

13-CV-85V(F)



FILED
JUN 06 2018
MARY C. LOEWENGUTH, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF NY

---

APPEARANCES:    CHRISTEN ARCHER PIERROT, ESQ.
                      Attorney for Plaintiffs
                      3959 N. Buffalo Road
                      Orchard Park, New York 14127

                      COLLIGAN LAW LLP
                      Attorneys for Plaintiffs
                      A. NICHOLAS FALKIDES,
                      MATTHEW K. PELKEY, of Counsel
                      12 Fountain Plaza, Suite 600
                      Buffalo, New York 14202

                      BLITMAN & KING
                      Attorneys for Defendants
                      DANIEL R. BRICE,
                      JULES L. SMITH, of Counsel
                      The Powers Building
                      16 West Main Street, Suite 207
                      Rochester, New York 14614

This action alleging violations of ERISA's anti-cutback provision, 29 U.S.C. § 1054(g), wrongful denial of pension benefits, and Defendants' breach of fiduciary duty was referred to the undersigned by Hon. Richard J. Arcara for all pretrial matters on October 29, 2014 (Dkt. 40). It is presently before the court on Plaintiffs' motion to

compel discovery filed November 15, 2017 (Dkt. 86) ("Plaintiffs' motion"). Plaintiffs are beneficiaries of an ERISA covered pension plan ("Plan") administered by Defendants as trustees of a Pension Fund ("the Fund") established by a trust ("Trust") established by Plaintiffs' labor union and participating employees in 1999. Between 2002 and 2008, Plaintiffs were granted early retirement pensions by Defendants under the terms of the Plan. In late 2011, Defendants concluded that Plaintiffs' continued employment with participating employers in non-disqualifying work meant Plaintiffs had not in fact retired when Plaintiffs' applications for early retirement pensions were approved by Defendants and that pursuant to provisions of the Internal Revenue Code applicable to VCP pension trusts like the Fund, Plaintiffs' continued receipt of early pension benefits jeopardized the continued VCP status of the Fund. Defendants accordingly determined that because the terms of the Trust required the Plan be administered to preserve its tax except status Plaintiffs' pensions had been erroneously approved under the terms of the Plan at that time and in early 2012 required Plaintiffs to terminate their employment with participating employers or forgo further monthly pension benefit payments. For those Plaintiffs who continued to receive pensions, Defendants also reduced Plaintiffs' benefits in order to partially recover the prior, improperly awarded benefits. For those Plaintiffs who refused to terminate their employment, their pension benefits were terminated until they reach age 65. In May 2012, in order to avoid an I.R.S. audit and potential loss of the Fund's VCP status, Defendants also advised the I.R.S. of Plaintiffs' erroneously approved pensions and that Defendants had sought to compel Plaintiffs' compliance with Defendants' demands and that Defendants had formally amended the Plan to assure its compliance with all applicable I.R.S. regulations and rulings, including in the case of early retirement a complete termination of any further employment with a

participating employer, which submission was accepted by the I.R.S. without adverse action against the Fund.

Specifically, Plaintiffs seek documents responsive to Plaintiffs' Second Set of Document Requests served October 13, 2017, Request No. 8 (Defendants' communications with the Internal Revenue Service, in particular, regarding Defendants' Voluntary Compliance Program ("VCP") submission to the Internal Revenue Service); Request No. 9 (the rate of return from 2002 to present on Defendants' plan assets); Request No. 10 (agenda and minutes of Defendants' trustees' meetings at which Plaintiffs' applications for early retirement benefits were approved); Request No. 11 (agendas and minutes for all Defendants' trustees' meetings at which the alleged overpayment of participants' early retirement benefits was discussed); and Request No. 12 (agendas and minutes of all Defendants' trustees' meetings at which Plaintiffs' case was discussed) ("Plaintiffs' Requests"). In Defendants' response, dated October 13, 2017 (Dkt. 90), Defendants objected to Plaintiffs' Requests based on lack of relevancy, vagueness, overbreadth and attorney-client privilege. In opposition to Plaintiff's motion, Defendants contend Plaintiffs failed to comply with Fed.R.Civ.P. 31(a)(1) which requires parties meet and confer in a good faith effort to avoid the need for judicial intervention, Defendants have provided copies of Defendants' VCP documents responsive to Plaintiffs' Request No. 8, and copies of a document showing the rate of return on Defendants' plan assets responsive to Plaintiffs' Request No. 9. Dkt. 90 at 4-6. Defendants further opposed Plaintiffs' motion on the grounds that some documents responsive to Plaintiffs' Requests Nos. 10-12 were redacted either because the redacted portions included irrelevant information such as material relevant to plan participants other than Plaintiffs, irrelevant matters such as disability benefits, plan

3

investments and investment manager performance, asset transfers, document retention policies, annual audits, governmental filings other than the VCP documents, and funding actions. Dkt. 89 at 8-9. Other documents responsive to Plaintiffs' Requests Nos. 10-12 were redacted or withheld based on attorney-client privilege and are described in Defendants' Privilege Log. Dkt. 90-10 at 2-5. As to Plaintiffs' Requests No. 10-12, Plaintiffs asserted that the presence of third-parties at several of Defendant trustees' meetings and partial production of the requested minutes had waived Defendants' privilege objection. Dkt. 86 ¶¶ 21-22.

In Plaintiffs' Reply Memorandum (Dkt. 92) ("Plaintiff's Reply"), Plaintiffs contend that Plaintiffs complied with Rule 37(a)1) to the extent time and the constraints imposed by the Third Amended Scheduling Order's cut-off date of November 15, 2017 (*see* Dkt. 78), filed August 29, 2017, leaving the parties a limited period within which to engage in further production regarding Defendants' trustees' meetings such that further negotiations were rendered futile. Dkt. 92 at 1-2. Plaintiffs also contend that the fiduciary exception to the attorney-client privilege requires Defendants produce unredacted and withheld documents responsive to Plaintiff's Requests Nos. 10-12. Dkt. 92 at 3-4. Plaintiffs further contend that to the extent such responsive documents were prepared in the normal form of routine business purposes no privilege attaches. *Id.* at 6 (citing cases).[1] Plaintiffs additionally argue the Defendants' partial production of redacted materials constitutes selective production and a subject-matter waiver of Defendants' asserted privilege. Dkt. 92 at 8. Finally, Plaintiffs request the court

---

[1] This contention has relevance to a claim of work-product protection pursuant to Fed.R.Civ.P. 26(b)(3)(A), an objection not raised by Defendants, not attorney-client privilege. *See United States v. Acquest Transit LLC*, 319 F.R.D. 83, 91 (W.D.N.Y. 2017) (work product protection inapplicable to documents created in typical form despite potential for litigation).

4

conduct an *in camera* review of the disputed records. Dkt. 92 at 9. In Defendants' Sur-Reply, Defendants oppose Plaintiffs' belated assertions of the fiduciary exception as first raised in Plaintiffs' Reply. Dkt. 96 at 4-5 (citing cases). Defendants also argue that Plaintiffs failed to contest Defendants' representation that much of the responsive redacted material Defendants produced dealt with irrelevant matters and that these documents are therefore not in dispute. Dkt. 96 at 7. Defendants also state that at only two trustees' meetings for which agendas/minutes were withheld as privileged, November 11, 2016 and February 24, 2017, Dkt. 90 ¶ 29, the Fund's actuary was present to assist in discussion of the instant litigation of by Defendants and Defendants' attorney. Dkt. 96 at 7. Defendants further asserted that even if the fiduciary exception were considered it is inapplicable to Defendants' consideration of potential adverse legal and financial repercussions to the Fund arising from Defendant's "operational error" in granting early retirement benefits to Plaintiffs which, in retrospect, according to Defendants, violated both the terms of the Trust, upon which the Plaintiffs' Pension Plan is based, and applicable provisions of the Internal Revenue Code and regulations which the I.R.S. acknowledged in accepting the Defendants' VCP submission. Dkt. 96 at 8. Oral argument was conducted December 19, 2017 (Dkt. 97) and decision was reserved to provide a further opportunity for the parties to informally resolve the issues raised by Plaintiffs' motion. However, the court was subsequently informed that such efforts were unsuccessful. (Dkts. 126, 127).

1. Rule 37(a)(1).

Where time constraints limit the practical ability of parties to engage in an extended good faith attempt to avoid unnecessary discovery motions, and where the parties are likely to remain in disagreement, courts will not reject motions to compel for

5

failure to engage in futile efforts to resolve discovery disputes. *See United States v. Acquest Transit LLC,* 319 F.R.D. 83, 89-90 (W.D.N.Y. 2017) (further Rule 37(a)(1) discussions unnecessary when parties remained at "loggerheads"); *Land Ocean Logistics, Inc. v. Acqua Gulf Corp.,* 181 F.R.D. 229, 235 (W.D.N.Y. 1998) (time constraints render further Rule 37(a)(1) unrealistic). Here, while Plaintiffs, by Plaintiffs' somewhat belated – October 13, 2017 – document request, are to an extent responsible for the shortness of time within which to attempt to resolve, pre-motion, all of the issues raised by Plaintiffs' motion, even if, as now appears to be the case, the parties could have resolved Plaintiffs' I.R.S.— V.C.P. documents and rate of return requests, responsive to Plaintiffs' Requests Nos. 8 and 9, the parties' continued dispute over Plaintiff's requests for agendas and minutes of Defendant trustees' meetings, Request Nos. 10-12, would have nevertheless remained open. Accordingly, the court finds, on this record, Plaintiffs have sufficiently complied with Rule 31(a)(1).

2. <u>Defendants' VCP Documents</u>.

The record indicates Defendants have provided Plaintiffs with copies of both Defendants' 2012 VCP submissions and the August 16, 2012 I.R.S. Compliance Statement in response to Defendants' VCP submission. *See* Dkt. 90 ¶ 23; Dkt. 90-5 at 3; Dkt. 89 at 7. Plaintiffs nevertheless argue that Defendants' responses indicate there were two differing versions of the application and that given the importance of the problem addressed by Defendants' VCP, *i.e.*, Defendants' admission of a significant non-compliance with applicable I.R.S. regulations which could impair the VCP status of the Fund, more responsive documents must exist and should be produced. Dkt. 92 at 10. Plaintiffs alternately request Defendants be required to execute I.R.S. Form 4506 to enable Plaintiffs to obtain such suspected additional documents directly from the

agency. *Id.* Defendants reiterated Defendants' response that no other responsive documents exist, that Plaintiffs' Form 4506 request is untimely as discovery concluded on November 30, 2017, and that involving the I.R.S. in this issue would further delay concluding discovery. Dkt. 96 at 9. It is basic that a party cannot be compelled to produce documents that do not exist, *see Hallmark v. Cohen & Slamowitz*, 302 F.R.D. 295, 299 (W.D.N.Y. 2014) (holding defendant not required to have audited financials prepared to comply with plaintiff's discovery request) and that a requesting party's speculation to the contrary is an insufficient basis on which to direct further responsive efforts by a producing party. *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 435 (S.D.N.Y. 2011) (denying motion to compel because movant "cannot simply rely on speculation that [nonmovant] is withholding documents" (citations omitted)). Accordingly, Plaintiffs' motion with respect to Defendants' VCP documents should be DENIED.

3. Rate of Return.

Plaintiffs do not dispute that Defendants, on November 29, 2017, produced copies of computer print-outs showing data responsive to Plaintiffs' Request No. 9 purporting, by virtue of the presence of the UBS name on the print-outs, to have been prepared by Defendants' financial advisor, UBS. Nor do Plaintiffs' dispute that at oral argument on Plaintiffs' motion conducted December 19, 2017 (Dkt. 97), Defendants' attorney stated that the documents came from UBS. Yet, Plaintiffs demand that Defendants produce a formally authenticated responsive document. Dkt. 92 at 9. In Plaintiffs' letter to the court dated January 16, 2018, Dkt. 126, Plaintiffs again demanded Defendants provide "an affirmative representation" to resolve this issue satisfactory to Plaintiffs. Dkt. 126 at 3. Although the court finds Plaintiffs' continued insistence for such

authentication, under the circumstances, borders on the picayune, the court, notwithstanding, assumes Defendants' compliance with Plaintiffs' latest demand will be, or has been, forthcoming. Accordingly, Plaintiffs' motion as to Plaintiffs' Request No. 9 should be DISMISSED as moot.

(4)     Defendants' Agendas and Minutes.

In response to Plaintiffs' Requests Nos. 10-12, Defendants provided redacted material and withheld documents as either irrelevant, *i.e.*, relating to persons and subject matter not involved in the instant case, or as privileged.[2] In Plaintiffs' Reply, Plaintiffs limit their argument to Defendants' assertion of privilege based on waiver and the so-called fiduciary exception to the attorney-client privilege. Dkt. 92 at 2-4. The court therefore finds that by Plaintiffs' failure to contest Defendants' representation that Defendants' unrelated discussions are not relevant and thus need not be produced Plaintiffs do not require further production of documents which Defendants have redacted or withheld based on containing irrelevant material. As to such documents, Plaintiffs' motion is therefore DISMISSED as moot. The court turns to Plaintiffs' request for production of documents Defendants continue to assert in Defendants' privilege log, Dkt. 90-10, are privileged.

At the threshold, Defendants argue Plaintiffs' assertion of the fiduciary exception in Plaintiffs' Reply bars consideration of this argument. Dkt. 96 at 4-5. However, where a party has been given an opportunity to respond to such new argument the court has discretion to entertain it. *See Pullano v. Chrysler Corporation*, 2009 WL 10692145, at

---

[2] Defendants fully responded to Plaintiffs' Request No. 10 seeking copies of Trustees' minutes approving Plaintiffs' early retirement pensions. *See* Dkt. 89 n. 3. Plaintiffs do not dispute Defendants' statement. *See* Dkt. 92 (*passim*). Thus, Plaintiffs' Request No. 10 is deemed moot and should be DISMISSED as to this issue.

8

*4 n. 8 (W.D.N.Y. Apr. 23, 2009) (citing *Ruggerio v. Warner-Lambert*, 424 F.3d 249, 252 (2d Cir. 2005)), *report and recommendation adopted*, 2011 WL 13244291 (W.D.N.Y. July 19, 2011) (Arcara, J.). *See also Compania Del Bajo Caroni v. Bolivarian Republic of Venezuela*, 341 Fed.Appx. 722, 724 (2d Cir. 2009). Here, the court granted Defendants' request to file a sur-reply (Dkt. 95), and Defendants provided a substantive opposition to Plaintiffs' fiduciary exception assertions, *see* Dkt. 96 at 8-9. Accordingly, the court considers Plaintiffs' contention that the fiduciary exception applies to the requested documents redacted or withheld based on privilege; however, for the reasons discussed *infra*, the court finds such exception irrelevant to Plaintiffs' requests.

The attorney-client privilege attaches to documents containing a confidential communication by a client seeking legal advice from an attorney made with the intent that such communication remain confidential unless waived. *Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 83 (W.D.N.Y. 2011) (citing *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) (citing *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.3d 1032, 1036 (2d Cir. 1984))). The privilege also applies to documents providing such advice to the extent the document discloses the client's confidential communications. *Bell v. Pfizer, Inc.*, 2006 WL 2529762, *4 (S.D.N.Y. Aug. 31, 2006) (citing caselaw). The burden to establish the privilege as well as the absence of a waiver is on the party asserting it. *Robbins & Meyers, Inc.*, 274 F.R.D. at 83 (citing *Int'l Bhd. of Teamsters*, 119 F.3d at 214). "[C]ommunications between client and attorney intended for publication or communication to third-parties, are not intended to be confidential when made in order to obtain legal assistance and therefore are not within the privilege." *Id.* (citing *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) (citing *United States v. Tellier*, 255 F.2d 441,

9

447 (2d Cir.), *cert. denied*, 358 U.S. 821 (1958)). Further, client communications with counsel intended to facilitate preparation of requests to governmental agencies are not protected from disclosure. *Id.* (citing cases); *see also Bradley v. C.I.R.*, 209 Fed.Appx. 40, 41 (2d Cir. Dec. 15, 2006) (affirming Tax Court's decision that plaintiff waived attorney client privilege by disclosing documents to accountant who subsequently disclosed the documents to the I.R.S. during an audit). Under the fiduciary exception, communications between fiduciaries, particularly as relevant here, fiduciaries, such as Defendants, of an ERISA-covered pension plan, and their counsel "intended to assist in the administration of the plan" are not considered as within the privilege and are required to be provided to beneficiaries of a plan, like Plaintiffs, as such the real parties in interest represented by their fiduciaries, upon request. *See In re Long Island Lighting Company v. Long Island Lighting Company*, 129 F.3d 268, 272 (2d Cir. 1997). However, if the requested communication deals with matters of a "plan's design or amendment," such matters are considered as non-fiduciary in nature, the fiduciary exception is inapplicable, and the material requested by a beneficiary may be deemed to be privileged. *Id.* 271-72.

Here, the record shows that after Defendants became aware that their approval of Plaintiffs' early retirement benefits were likely to be in violation of I.R.S. regulations, particularly 26 C.F.R. § 1.401-1 (defining requirements for pension trusts VCP status including "retirement" of qualified employees), thereby jeopardizing the VCP status of the Fund, as stated in Defendants' Privilege Log, Dkt. 90-10, Defendants began discussions with counsel concerning "the retirement issue in this litigation" at a

November 11, 2011 meeting.[3] Dkt. 90-10 at 2. According to the Privilege Log, these discussions were continued at the November 16, 2011 and December 7, 2011 Trustees meetings. Id. at 2-3. Following the November 16, 2011 meeting with counsel regarding "the retirement issue in this litigation," Dkt. 90-10 at 2, Defendants sent a letter on November 29, 2011 to Plaintiffs stating that Plaintiffs' continued work with their respective employers after receiving early retirement benefits rendered such benefits illegal threatening the VCP status of the Plan. Dkt. 99 at ¶ 34.[4] Following the December 7, 2011 meeting with counsel on the same issue, Dkt. 90-10 at 2, Defendants sent another letter, on December 27, 2011, to Plaintiffs again informing Plaintiffs that their early pension benefits were illegal unless Plaintiffs immediately terminated Plaintiffs' continued employment with a contributing employer and immediately provided to the Plan evidence of such termination. Dkt. 99 ¶ 36. Following three more meetings – January 17, 2012, February 10, 2011, and February 21, 2011, – with counsel on the same subject matter, i.e., "the retirement issue in this litigation," see Dkt. 90-10 at 3, Defendants filed with the I.R.S. Defendants' VCP submissions on March 2, 2012, Dkt. 99 ¶ 49, in which Defendants explained in fair detail how, according to Defendants, Defendants came to misinterpret and erroneously apply applicable I.R.S. regulations to Plaintiffs' applications for early employment benefits under the Plan such that Plaintiffs were, as Defendants represented, awarded pensions without discontinuing employment with participating employers which the regulations, under a

---

[3] The notion that an actual "retirement" is prerequisite for early retirement pensions from a tax qualified pension fund is elucidated in I.R.S. P.L.R. 201147038, 2011 WL 5893533 (Nov. 25, 2011).
[4] Affidavit of Debra Koropolinski, Administrator of the Fund, In Support of Defendants' Motion for Summary Judgment. Because the record on Plaintiffs' motion insufficiently explains the factual scenario giving rise to the instant discovery dispute regarding discovery of the Trustees' meetings at issue on Plaintiffs' motion, the court finds it is helpful to refer to Defendant Koropolinski's affidavit to facilitate a correct analysis of the merits of Plaintiffs' motion on this issue.

correct application by Defendants of the Plan terms, should have disqualified Plaintiffs from receiving the pensions for not having fully retired, an error described by Defendants as based on a "mutual mistake of law," Dkt. 126 at 30, or "a significant Plan operational error." Dkt. 96 at 8. Defendants also advised the I.R.S. that if Plaintiffs refused to discontinue such outside employment, Defendants would terminate Plaintiffs' monthly pension payments. Dkt. 1 ¶ 1(g); Dkt. 126 at 30. Defendants also stated Defendants did not intend to seek recoupment from Plaintiffs of the benefits mistakenly yet unlawfully paid and that any adverse financial impact on the Plan had been or would be ameliorated by future requirement contributions from participating employers. Dkt. 126 at 44.

The record thus demonstrates that the Defendants' discussions with counsel were intended to obtain advice as to whether Defendants were in violation of federal laws, provisions of the Internal Revenue Code, particularly 26 U.S.C. § 401(a) *et seq.*, and related regulations governing the VCP status of pension trusts, and necessary corrective actions to be taken by the Trustees including communicating to Plaintiffs through the two letters sent by Defendants to Plaintiffs regarding Defendants' legal predicament, the adverse effects upon Plaintiffs and the actions to be taken against Plaintiffs as Defendants and Defendants' counsel had manifestly concluded in those discussions were required. Indeed, in order to persuade Plaintiffs to comply with Defendants' requests and the seriousness of Defendants' perceived legal difficulty and its cause, it was likely necessary to spell out such facts in Defendants' letters to Plaintiffs. The record also confirms what Plaintiffs already know, based on Defendants' voluntary production of Defendants' VCP material, in response to Plaintiffs' Request No. 8, that Defendants communicated to Plaintiffs the substance and results of the six

meetings with counsel prior to filing Defendants' VCP March 2012 submission to the I.R.S. in which the history and events leading to Defendants' actions in rescinding Plaintiffs' early retirement pensions in an effort to avoid an enforcement audit by the I.R.S. and potential loss of the Plan's exempt status, were provided. That Defendants' discussions with counsel as reflected in the November 11, November 16, and December 11, 2011 meetings were conducted with the expectation that the substance of these discussions and corresponding advice of counsel would eventually be provided to the I.R.S. is further demonstrated by the fact that Defendants' counsel, Mark Stulmaker, who was present at these meetings was the same attorney who filed Defendants' VCP submission, thereby supporting that the subject matter, if not details, of Defendants' discussions were not intended to remain confidential but were intended to be eventually communicated to the I.R.S. through counsel's submission on behalf of the Trustees. *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (privilege requires that communication's "were intended to be, and in fact were, kept confidential") (citing *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "'[T]he privilege attaches <u>to the substance</u> of a communication <u>and not to the particular words</u> used to express the communications content.'" *Robbins & Myers, Inc.*, 274 F.R.D. at 84 (quoting *United States v. Tellier*, 255 F.2d 442, 447 (2d Cir.), *cert. denied*, 358 U.S. 821 (1958) (underlining added)). Thus, based on the record there can be little doubt that the discussions between Defendants and counsel at the meetings the agenda and minutes of which are subject to Plaintiffs' Requests 11-12, regarding Plaintiffs' pensions occurred with the expectation that the subject of those conversations was to be communicated to Plaintiffs and the I.R.S., and Defendants have not met Defendants' burden, *see Robbins & Myers, Inc.*, 274 F.R.D. at 83 (burden to establish each

13

prerequisite for privilege on party who asserts the privilege) (citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989), to show that the meetings with counsel conducted November 11, 2011, November 16, 2011, December 7, 2011, January 17, 2012, February 10, 2012, and February 21, 2012 were intended to be fully confidential and remains. As such, the privilege did not attach to the agenda and minutes of these meetings which should be produced as responsive to Plaintiffs Requests Nos. 11-12. Because no privilege attached to these records, it is unnecessary to address Plaintiffs' and Defendants' contentions regarding the applicability of the fiduciary exception as to these documents.[5]

Even if the privilege attached to the minutes and agenda of these meetings, it was waived by the two letters Defendants sent to Plaintiffs and Defendants' VCP submission to the I.R.S. *See Gill v. Bausch & Lomb Supplemental Retirement Plan I*, 284 F.R.D. 84, 91 (disclosure of substance of privileged communication waived privilege) (citing *United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997) (citing *In re Kidder Peabody Sec. Litig.* 168 F.R.D. 459, 469) (S.D.N.Y. 1996))); *see also Tracy v. NVR, Inc.*, 2011 WL 2418632, at *2) (W.D.N.Y. Jun. 14, 2011) (waiver of privilege found where company disclosed in letter to employees that counsel had advised that the company's policies "conform to long-standing Department of Labor Guidelines") (citing cases)).

With respect to Defendants' meeting with counsel conducted July 3, 2012, Defendants indicate that such sessions addressed Plaintiffs' administrative ("internal")

---

[5] The court notes that Plaintiffs' allegation that Defendants' action amounted to a prohibited amendment to the Plan, *see* Dkt. 1 ¶ 32, a non-fiduciary function, *see In re Long Island Lighting Company*, 129 F.3d at 271-72 (plan amendment is non-fiduciary in nature), is inconsistent with Plaintiffs' assertion that the fiduciary exception applies to Defendants' determination.

14

appeals of Defendants' demand that Plaintiffs cease employment with Plaintiffs' employers or elect to continue such employment and thus not ~~to continue to~~ receive further pension payments. Dkt. 90-10 at 3. Defendants do not dispute this document would not be responsive to Plaintiffs' Requests No. 11 and 12. Instead, Defendants assert, Dkt. 90-10 at 3, the agenda and minutes for this meeting are privileged. However, as with Defendants' pre-determination meetings in November and December 2011, the record supports that the subject matter of Defendants' rationale for lessening Plaintiffs' early retirement pensions in order to achieve what Defendants determined to be a necessary change to comply with I.R.S. requirements was also part and parcel of Defendants' refusal to grant Plaintiffs' administrative appeals, which occurred on June 27, 2017, which refusal was intended to be communicated to Plaintiffs who appealed. Indeed, as the substance of Defendants' eventual refusal to grant Plaintiffs' appeals had been communicated to both Plaintiffs and the I.R.S., unless there was some other heretofore undisclosed reason for such denials, not explained by Defendants as is Defendants' burden, it is difficult to understand how Defendants could have any reasonable basis on which to assert the privilege as regards Defendants' consideration of Plaintiffs' appeals regardless of any assistance provided by counsel. Thus, contrary to Defendants' inclusion of this meeting in the Privilege Log, the rationale for the denials was expected at that time to be communicated to Plaintiffs and the withheld information could not satisfy the prerequisite degree of continuing confidentiality expected by Defendants necessary to assert the privilege. *See* Discussion, *supra*, at 9-10, Accordingly, the agenda and minutes of the July 3, 2012 meeting should also be disclosed. As no privilege attached to these documents, it is similarly unnecessary to address Plaintiffs' contention based on the fiduciary exception.

Likewise, with regard to the November 16 and December 9, 2016, and February 24, 2017 meetings which according to the Privilege Log included discussions with counsel of the "overpayment of pension benefits to Plaintiffs," Dkt. 90-10 at 4, it is reasonably clear from the record that the subject matter underlying such alleged "overpayments" arose from Defendants' recent discovery that Defendants were required to take adverse actions against Plaintiffs with respect to Plaintiffs' pensions in order to assure the Fund's compliance with applicable provisions of the Internal Revenue Code and I.R.S. regulations and thereby preserve the VCP status of the Fund. As discussed, Discussion, *supra*, at 10-14, the subject matter of the alleged necessity for taking action to receive the Plaintiffs' pensions originally awarded, thus constituting the referenced "overpayment," had previously been communicated to Plaintiffs in December 2011 and January 2012 and the I.R.S. in March 2012. The assertion five years later of the privileged nature of such discussions cannot establish that Defendants and counsel could expect they could thereby regain the degree of expected confidentiality required for the privilege to attach to these meetings once their confidentiality was destroyed by those earlier communications to third-parties. Accordingly, Plaintiffs' motion as to Defendants' November 11, 2016, December 9, 2016 and February 24, 2017 meetings should be GRANTED and Plaintiffs fiduciary exception contention as to these meetings therefore need not be addressed.

The five remaining meetings at issue – March 20, 2013, February 26, 2014, May 13, 2016, August 26, 2016 and May 12, 2017 – according to Defendants, involved discussions with counsel with respect to "the instant litigation," Dkt. 90-10 at 3, 4, 5, which Plaintiffs commenced on January 25, 2013. It is basic that seeking and providing "'assistance in some legal proceeding'" is a common form of legal service well within the

scope of the privilege. See S.E.C. v. Yorkville Advisors, LLC, 300 F.R.D. 152, 161 (S.D.N.Y. 2014) (quoting Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995)). While the Defendants' Privilege Log fails to further elaborate on the specific issues covered during the meetings on "the instant litigation" there is no substantial reason to doubt the accuracy of Defendants' general description, and Plaintiffs do not contend that Defendants' assertions of privilege are inadequate. See Dkt. 92 (passim). Cf. Yorkville Advisors, LLC, 300 F.R.D. at 162 ("'cursory descriptions' of documents in privilege log insufficient basis on which to assert privilege") (citing United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)). Further, client communications and related legal advice to ERISA plan fiduciaries after a challenged determination and in response to actual litigation attacking such determination fall outside the fiduciary exception as such consultations concern the liability of a plan fiduciary and not plan administration. See Black v. Pitney Bowes, 2006 WL 3771097, at *3 (S.D.N.Y. Dec. 21, 2006) (holding that fiduciary exception did not apply to communications between a fiduciary and counsel that occurred after the challenged determination by a fiduciary) (citing Bell v. Pfizer Inc., 2006 WL 2529762, at *7 (S.D.N.Y. Aug. 31, 2006)). Here, moreover, the asserted communications pertain to pending, not threatened, litigation. Id. at *4. As such, the agendas and minutes of Defendants' meetings on March 20, 2013, February 26, 2014, May 13, 2016, August 26, 2016, and May 12, 2017 are privileged, not subject to the fiduciary exception, and need not be produced and, as to these documents, Plaintiffs' motion is DENIED.

Given that the court finds Defendants' privilege log a sufficient basis upon which to resolve Plaintiffs' motion, Plaintiffs' alternative request, Dkt. 92 at 9, that the court conduct an in camera inspection of the documents at issue is DENIED. See United

States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997) (courts have discretion to conduct *in camera* review of evidence to determine whether asserted privilege applies).

## CONCLUSION

Based on the foregoing, Plaintiffs' motion, Dkt. 86, is GRANTED in part, DENIED in part, and DISMISSED as moot in part.

As the court finds that there is a colorable basis to find Defendants failed to provide the requested discovery with respect to certain of Plaintiffs' document requests was without substantial justification, Defendants' shall, pursuant to Fed.R.Civ.P. 37(a)(5)(A), show cause not later than 20 days of this Decision and Order why Plaintiffs' expenses incurred in connection with Plaintiffs' motion should not be awarded; Plaintiffs' response shall be filed within 10 days thereafter; any reply shall be filed within five days. Oral argument shall be at the court's discretion.

SO ORDERED.

/s/ Leslie G. Foschio
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: June 6th, 2018
Buffalo, New York