UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY METZGAR, RICHARD MUELLER,
KEVIN REAGAN, RONALD REAGAN,
CHARLES PUGLIA, SHERWOOD NOBLE,
DANIEL O'CALLAGHAN,
                            Plaintiffs,

        v.

U.A. PLUMBERS AND STEAMFITTERS LOCAL
  NO. 22 PENSION FUND,
BOARD OF TRUSTEES OF U.A. PLUMBERS AND
  STEAMFITTERS LOCAL NO. 22 PENSION FUND, and
DEBRA KORPOLINSKI, in her capacity as Plan
  Administrator, for the U.A. Plumbers and Steamfitters
  Local 22 Pension Fund,
                            Defendants.
_____

**DECISION
and
ORDER**[1]
----------------------------
**REPORT
and
RECOMMENDATION**

**13-CV-85V(F)**

APPEARANCES:           CHRISTEN ARCHER PIERROT, ESQ.
                       Attorney for Plaintiffs
                       3959 N. Buffalo Road
                       Orchard Park, New York 14052

                       COLLIGAN LAW LLP
                       Attorneys for Plaintiffs
                       A. NICHOLAS FALKIDES,
                       MATTHEW K. PELKEY, of Counsel
                       12 Fountain Plaza, Suite 600
                       Buffalo, New York  14202

                       BLITMAN & KING
                       Attorneys for Defendants
                       DANIEL R. BRICE,
                       JULES L. SMITH, of Counsel
                       The Powers Building
                       16 West Main Street, Suite 207
                       Rochester, New York  14614

---

[1] Motions pursuant to Rule 15(d) are non-dispositive. *See McKenzie v. Obertean*, 2019 WL 441593, at *1 n. 1 (W.D.N.Y. Feb. 5, 2019) (citing *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); (Second Circuit found magistrate judge decision to deny plaintiff's motion to amend based on futility not "an abuse of discretion."); *Palmer v. Monroe Cty. Sheriff*, 378 F.Supp.2d 284, 289 (W.D.N.Y. 2005) (internal citation omitted); *but see Crenshaw v. Hamilton*, 2012 WL 1565696, at *1 n. 1 (W.D.N.Y. Mar. 30, 2012) (citing *Velez v. Hartke*, 2011 WL 2489987, at *1 n. 2 (W.D.N.Y. May 13, 2011)).  Accordingly, as Plaintiffs' motion for leave to serve a supplemental complaint is closely related to the parties' opposing motions for summary judgment the court considers such motions in this combined Decision and Order and Report and Recommendation.

**JURISDICTION**

This case was referred to the undersigned by Hon. Richard J. Arcara for all pretrial matters on October 29, 2014 (Dkt. 40). It is presently before the court on Defendants' motion for summary judgment, filed February 1, 2018) (Dkt. 98), Plaintiffs' motion for summary judgment (Dkt. 101), Plaintiffs' motion for leave to file a supplemental complaint filed February 1, 2018 (Dkt. 110), and Plaintiffs' motion for a preliminary injunction also filed February 1, 2018 (Dkt. 111).

**BACKGROUND**

In this ERISA, 29 U.S.C. § 1001, *et seq.*, action Plaintiffs allege unlawful reductions and/or elimination of Plaintiffs' accrued pension benefits in violation of 29 U.S.C. §§ 1054(g), denial of Plaintiffs' pension benefits in violation of § 1132(a)(1)(B), breach of fiduciary duty in violation of § 1104(a)(1), and declaratory relief. On February 1, 2018, Defendants moved for summary judgment (Dkt. 98) along with the Affirmation of Jules L. Smith in Support of Defendants' Motion For Summary Judgment (Dkt. 98-3) and an Affidavit In Support Of Defendants' Motion For Summary Judgment (Dkt. 99) attaching Exhibits A – Q (Dkt. 99-1-17) ("Defendants' motion"). An (Amended) Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment was filed February 1, 2018 (Dkt. 100).

Plaintiffs filed their Notice Of Motion For Summary Judgment also on February 1, 2018 (Dkt. 101) attaching Plaintiffs' Memorandum Of Law In Support Of Motion For Summary Judgment (Dkt. 101-1), Plaintiffs' Rule 56.1 Statement Of Undisputed Facts (Dkt. 101-2), Attorney Affirmation of A. Nicholas Falkides, Esq. (Dkt. 101-3) with Exhibits A-T (Dkts. 101-4-23), the Affidavit of Ronald Reagan in Support of Motion for

Summary Judgment (Dkt. 102), Affidavits in Support of Plaintiffs' Motion for Summary Judgment of Kevin Regan (Dkt. 103), Ronald Reagan (Dkt. 104), Gary Metzgar (Dkt. 105), Richard Muller (Dkt. 106), Daniel O'Callaghan (Dkt. 107), Charles Puglia (Dkt. 108), and Sherwood Noble (Dkt. 109). ("Plaintiffs' motion")

Defendants' Response To Plaintiffs' Local Rule 56.1 Statement (Dkt. 115) and Memorandum Of Law In Further Support Of Defendants' Motion For Summary Judgment And In Opposition To Plaintiffs' Motion For Summary Judgment (Dkt. 116) was filed March 5, 2018.[2] Plaintiffs' Counter-Statement of Facts (Dkt. 118), Memorandum Of Law In Opposition To Defendants' Motion For Summary Judgment (Dkt. 118-1) and the Attorney Affirmation of A. Nicholas Falkides (Dkt. 118-2) were filed March 5, 2018. Exhibits A – I for Plaintiff's Opposition (Dkt. 118) were filed in a separate filing on March 5, 2018 (Dkt. 119). Defendants' Memorandum Of Law In Reply To Plaintiffs' Opposition And In Further Support Of Defendants' Motion for Summary Judgment (Dkt. 120) and Plaintiffs' Reply Memorandum Of Law In Support Of Motion For Summary Judgment (Dkt. 121) were filed March 19, 2018.

Plaintiffs also moved on February 1, 2018, for Leave to File Supplemental Complaint (Dkt. 110) along with the Attorney Affirmation of Matthew K. Pelkey (Dkt. 110-1) attaching Exhibits A-H (Dkts.110-2-9) ("Plaintiffs' Motion To File A Supplemental Complaint"). Defendants opposed the motion by filing on March 5, 2018, Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion For Leave To File A Supplemental Complaint (Dkt. 114). Plaintiffs' reply, Attorney Affirmation of Matthew K.

---

[2] Defendants' Memorandum included Defendants' request to withdraw Defendants' counterclaims, Dkt. 116 at 18, which the court treats as a motion to dismiss counterclaim pursuant to Fed.R.Civ.P. 41(a)(2). *See* Discussion, *infra*, at 52-54.

Pelkey, was filed March 19, 2018 (Dkt. 122) with the continuation of exhibits filed as (Dkt. 124).

By papers filed February 1, 2018, Plaintiffs moved for a Preliminary Injunction (Dkt. 111) along with Plaintiffs' Memorandum Of Law In Support Of Motion For Preliminary Injunction and the Attorney Affirmation of Matthew K. Pelkey, Esq. (Dkt. 111-2) attached Exhibits A-F (Dkt. 111-3-18) ("Plaintiffs' Motion for Preliminary Injunction"). Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion For Preliminary Injunction was filed March 5, 2018 (Dkt. 117) and Plaintiffs' Reply Memorandum Of Law In Further Support Of Their Motion For Preliminary Injunction was filed March 19, 2018 (Dkt. 123).

Oral argument was deemed unnecessary. Based on the following Defendants' motion should be GRANTED; Plaintiffs' motion should be DENIED; Plaintiffs' motion to file a supplemental complaint should be DENIED; Plaintiffs' motion for preliminary injunction should be DENIED.

## FACTS[3]

Plaintiffs are retired members of U.A. Plumbers & Steamfitters Local 22 ("the Union") who, based on their prior active Union membership, were entitled to participate in the Defendant U.A. Plumbers & Steamfitters Local No. 22 Pension Fund ("the Fund"). The Fund is a defined benefit multi-employer pension plan under a Trust Agreement and Declaration created April 18, 1999 by the Fund's Trustees made up of representatives of the Union and an association of plumbing, heating and cooling service contractors doing business in Western New York ("the Trust"). The Fund's

---

[3] Taken from the pleadings and papers filed in this action.

pension benefits to eligible Union member participants are provided through the U.A. Plumbers and Steamfitters Local No. 22 Pension Fund Restated Plan of Benefits adopted by the Fund's Trustees effective May 1999 ("the Plan"). The Fund has eight trustees on the Board of Trustees – four representatives of the contractors and four from the Union. Defendant Korpolinski is the Administrator of the Fund, a position she had held since 2005; prior thereto the position was held by Janice L. Maslen. The Fund is financed by contributions of participating employers, plumbing, heating and cooling contractors, of Union members based on the number of hours worked by Union members who were employed by contractors participating in the Fund as required by a multi-employer Union Collective Bargaining Agreement ("CBA"). Plaintiffs are among 1,868 participants and beneficiaries of the Fund as of March 2012 which then had assets of approximately $140 million. An Employee is eligible for benefits under the Plan upon performing 800 hours of covered employment, *i.e.*, as a plumber or steamfitter, employment which is subject to the CBA ("covered service or employment") and is vested as an accrued pension benefit under the Plan after five years of covered service. Contributing employers make contributions to the Fund to support employee pensions based on an employee's hours of work in covered employment, but not on behalf of employees who serve in managerial positions or as project managers or estimators.

Article V Section 3 of the Trust grants to the Trustees the "full and exclusive discretionary authority to determine all questions of coverage and eligibility, method of providing benefits and all related matters . . . [and that the Trustees have] full discretionary authority to interpret the provisions of this Trust Agreement and the Plan of Benefits . . .." Dkt. 99-1 at 12-13. The Trust also requires the Trustees comply with

5

ERISA and the Internal Revenue Code so that "the Trust and Plan of Benefits . . . will be structured and operated to qualify for approval by the Internal Revenue Service ("I.R.S.") as a tax-exempt Trust and Plan to ensure that the Employer contributions to the Fund are proper deductions for income tax purposes" and states [i]t is the intention of the Trustees to fully comply with all requirements of the Internal Revenue Code." (Art. VII Sec. 4).  Dkt. 99-1 at 29.

The Plan in Art. V Sec. 1(a) provides for a "Normal Retirement" pension available to employees at age 65, Dkt. 99-2 at 15, an "Early Retirement" pension Art. V Sec. 1(c) at a reduced monthly payment, Dkt. 99-2 at 18, and as provided in Art. V Sec. 1(d) a "Special Early Retirement" pension ("Special Early Retirement" or "pension") available to an employee with at least 30 years of covered service at age 55 under a so-called Rule of 85, Dkt. 99-2 at 18, in the amount of the employee's Accrued Benefit.  *Id.* Beginning in 2002, each Plaintiff, then eligible under the Rule of 85, applied for and received the Fund's approval of a Special Early Retirement pension (Dkt. 101-2 ¶¶ 35-37).  The Plan also provided for a suspension of pension benefits for any recipient who received a Normal Retirement pension from the Fund and who worked for over 40 hours per month in a disqualifying employment or an industry covered by the Plan (steamfitting or plumbing).  Similarly, a recipient of an early retirement pension benefit, such as Plaintiffs' Special Early Retirement pensions, was subject to a suspension of pension benefits for any month in which the recipient worked in an occupation in which an employee was employed when pension benefits began, in the same industry and geographic area covered by the Plan, for more than 120 hours per month.  Art. V Sec. 3(a)(i) (Dkt. 99-2 at 21-22) ("Disqualifying Employment").  Employment in "a managerial position" or as a "project manager or estimator" for a participating employer by a

participant receiving a Special Early Retirement pension was not Disqualifying Employment subjecting the recipient to a suspension of benefits under Art. 5 Sec. 3 of the Plan ("Art. V Sec. 3"). Dkt. 99-2 at 21. Former employees who continued in non-Disqualifying Employment were also not subject to any limits as to total monthly working hours which also did not apply after a recipient reached age 70½. Art. V Sec. 3(a)(1). When Plaintiffs applied for their Special Early Retirement pensions the Plan did not contain any definition of the term "to retire" or "retirement," and the Plan was administered with the understanding that applicants for Special Early Retirement pensions could receive, without incurring a suspension of benefits, both their monthly Special Early Retirement pension as well as earnings from employment with a participating employer for whom the employee had previously worked provided the employees were to be employed in non-Disqualifying Employment, *i.e.*, a managerial position or an a project manager or estimator, at the time the employees' Special Early Retirement pensions commenced, as defined in Art. V Sec. 3; Dkt. 101-4 at 93-94; 110-11.

Plaintiff Ronald Reagan applied for his Special Early Retirement pension on July 8, 2002, at age 55 after more than 30 years of service with John W. Danforth ("Danforth") most recently as a general foreman. His pension, with a monthly benefit of $3,138, was approved August 1, 2002, effective August 1, 2002 at which time he commenced work as a project manager with Danforth. Plaintiff Noble applied for his pension on February 1, 2003, effective the same date, with a monthly benefit of $3,532 at age 55 after 30 years of service with Danforth. On the same date, Noble also commenced employment with Danforth as a project management/estimator. Plaintiff Kevin Reagan applied for his Special Early Retirement pension on December 10, 2004,

at the age of 55 with over 30 years of service with Mollenberg-Betz ("Mollenberg"), a contributing employer, most recently as a foreman. His pension with a monthly benefit of $3,497 was approved and became effective on January 1, 2005. Reagan had previously, in 2001, become eligible upon attaining age 55 for an Early Retirement pension and left covered employment with Mollenberg to become a project manager in which position he continued to work upon receiving his pension starting January 1, 2005.

Plaintiff O'Callaghan applied for his Special Early Retirement pension on January 12, 2007, at age 55 after 30 years of service with Danforth most recently as a foreman steamfitter. His pension was approved on February 1, 2007, effective March 1, 2007, at which time he continued employment with Danforth as a project manager while receiving monthly pension benefits of $3,098. Plaintiff Puglia applied for his Special Early Retirement pension on September 30, 2008, at age 60 after more than 30 years of service with MLP Plumbing and Mechanical, Inc. ("MLP"), a contributing employer, most recently as a plumber foreman. His pension was approved and became effective as of November 1, 2008, with a monthly benefit of $4,037. Shortly thereafter, Puglia commenced employment with MLP as a warehouse manager, a non-Union managerial position newly created by MLP. Plaintiff Metzgar applied for his Special Early Retirement pension at age 55 from the Plan in May 2009, with a monthly pension benefit of $4,313 having 30 years of covered service, most recently as a general foreman, with his employer Danforth, a participating employer in the Fund, which application was approved and became effective on June 1, 2009. On this date, Metzgar commenced employment with Danforth as a "rover," a new managerial position in which Metzgar mentored junior foremen for Danforth. Plaintiff Mueller applied for his pension

on April 21, 2004, at age 55 with a monthly benefit of $4,279 having more than 30 years of service with Danforth most recently as a foreman. Mueller's pension was approved and became effective on May 1, 2004, at which time Mueller continued employment with Danforth as a project manager.

Sometime in the fall of 2011, Korpolinski and Fund Trustee Michael McNally attended an employee benefits conference in New Orleans at which a presenter stated that it was unlawful for the Fund, as a tax-exempt pension trust fund, to pay early retirement pensions without the pension applicant having fully retired by completely separating from any employment with the prior employer. Dkt. 99 ¶ 31. This representation may have been based on an I.R.S. Private Letter Ruling No. 201147038, issued April 20, 2010 (Dkt. 100), 2011 WL 5893533 (Nov. 25, 2011) ("the PLR"), in which the I.R.S. stated that to retain its tax-exempt status, a qualified pension plan must require that a participant who elects to receive an early retirement pension upon becoming eligible, *i.e.*, prior to age 62, as permitted by Section 401(a)(36) of the Internal Revenue Code, must terminate all prior employment. Upon their subsequent review of the Plan, based on this new information Defendant Trustees determined that numerous Plan participants, including Plaintiffs, who had continued employment with their respective former participating employers upon receiving Special Early Retirement pensions, had been erroneously awarded such pensions in violation of the Internal Revenue Code, specifically § 401(a) of the Code ("§ 401(a)"), by Defendants which Defendants' characterized as "an operational error/mistake." Dkt. 99 ¶ 33. Based on the terms of the Trust requiring the Trustees to operate the Fund in a manner that preserved the Fund's tax-exempt status, the Trustees also determined that the pensions awarded to employees, including Plaintiffs, pursuant to the Rule of 85 under Art. V Sec.

3 also violated the terms of the Trust and Plan.  *Id.* ¶ 33.  Following the Trustees'

determination the Plan, on November 29, 2011, sent letters to all affected Special Early

Retirement pension beneficiaries including Plaintiffs advising of the Trustees' conclusion

that if the beneficiary had remained employed by his former employer, the beneficiary

was not entitled under the Plan to the Special Early Retirement pension he had been

receiving, and should contact the Plan's office. Dkt. 99 ¶ 34.  A second letter, dated

December 27, 2011, was sent by Defendant Korpolinski as Plan administrator to

Plaintiffs informing Plaintiffs that based on the I.R.S.'s required definition of retirement

under § 401(a), Plaintiffs must cease their current employment in order to continue to

receive their pensions after February 1, 2012, failing which their pensions would be

suspended.  Dkt. 99-14.  Because the recent I.R.S. Private Letter Ruling was limited to

early retirement benefits received at age 55 but not at age 62 or a later age, no letter

was sent to Plaintiff Ronald Reagan as he had then stopped all employment with

Danforth and had reached age 65 at that time and thus was not subject to a suspension

of his pension benefits under the Plan for having engaged in employment with his

previous employer at age 65.  Plaintiffs were also advised to file a claim with the Fund if

they wished to dispute Defendants' determination.  In response, Plaintiffs Metzgar,

Mueller, and O'Callaghan continued working for Danforth and their respective pensions

were therefore terminated by the Plan as of February 1, 2012; as requested by the

Fund, Plaintiffs Noble, Kevin Reagan, and Puglia withdrew from employment with their

respective employers, Danforth, Mollenberg and MLP, and the Fund continued their

pension payments.  Plaintiff O'Callaghan later terminated his employment with Danforth

and his pension payments were resumed.

On February 10, 2012, the Trustees amended the Plan by adding a new Section 5.5(a) which, in substance, Dkt. 99-3 at 80, states that retirement under the Plan requires a participant to separate from all service, *i.e.*, employment, with a contributing employer with the intent that such separation be permanent except for participants who attain the Normal Retirement Age (65) ("the February 2012 Amendments"). The February 2012 Amendments also amended Plan Section 5.3 to include any managerial position, project manager, and estimator as Disqualifying Employment for recipients of a Special Early Retirement pension except for participants who have attained age 65. Dkt. 99-3 at 80-81. Following adoption of these amendments Plaintiffs allege certain Plaintiffs were required to re-retire under the amended Plan as a condition to continued payments of their pension, *see* Dkt. 110-1 ¶ 1(h), an assertion which Defendants deny. Dkt. 110-2 ¶ 1(h).

On March 2, 2012, Defendants filed a Voluntary Correction Plan submission with the I.R.S., a procedure[4] by which tax exempt pension plans like the Fund could request I.R.S. approval of corrective actions taken by a plan necessary to preserve the tax-exempt status of the plan following self-reported non-compliance, *i.e.*, "failure" to comply with applicable I.R.S. requirements ("the VCP" or "the VCP submission"). Dkt. 99-16 at 2-24. In the VCP, Defendants explained that the Plan had been previously administered so as to permit participants, like Plaintiffs, eligible for an Special Early Retirement pension, to receive such a pension without terminating all further employment with a participating employer provided that the employees' further employment was as a manager, project manager, or estimator as Art. V Sec. 3 had

---

[4]  *See* Rev. Proc. 2006-27, 2006-22 I.R.B. 945 (May 30, 2006).

provided.  Defendants also represented to the I.R.S. that at the time of the VCP submission Defendants now understood "their  [past][5] interpretation and administration of the Plan was not consistent with the I.R.S.'s interpretation of a 'retirement' under Treasury Regulations §§ 1.401(a)-1(b)(1)(i) and 1.401(b)(1)(i) which [interpretation] requires a separation from employment with all employers contributing to the Plan (*see, e.g.*, PLR 201147038)[.]" Dkt. 99-16 at 21.  Defendants' VCP submission also stated that 30 participants in the Plan, including Plaintiffs, had received Special Early Retirement pensions in violation of this requirement and that Defendants had stopped payment of pension benefits to these individuals to obtain their compliance with Defendants' requests to terminate the non-Disqualifying Employment in which such participants had been engaged.  *Id.*  The Fund also advised the I.R.S. it did not intend at that time to seek recoupment of any pension payments made in violation of the Defendant Trustees' present understanding of applicable I.R.S. requirements and that any potential loss to the Fund as a result of the Trustees' error in distributing such payments had been accounted for in "the funding liabilities of the Plan."  Dkt. 99-16 at 22, 23.  In its response to the VCP, dated August 16, 2012, Dkt. 99-17, the I.R.S. stated that based on Defendants' VCP submission, the I.R.S. would "not pursue the sanction of revoking the tax-favored status of the plan" based on the compliance failures and corrective actions described by Defendants in the VCP submission.  Dkt. 99-17 at 8.  The I.R.S. also stated in its acceptance of Defendants' VCP submission, that the "compliance statement" did not affect the rights of any party under ERISA Title I.  Dkt. 99-17 at 8.

---

[5]  Unless otherwise indicated bracketed material added.

On March 2, 2012, Plaintiffs, through counsel, filed an administrative appeal to Defendants of the Fund's 2011 determination ("Defendants 2011 Determination") requiring Plaintiffs to terminate their employment or suffer a suspension of their pension benefits. In their appeal, Plaintiffs contended, *inter alia,* that the I.R.S. definition of retirement for purposes of § 401(a) was not relevant to Plaintiffs' continued entitlement to their Early Retirement pensions as protected by ERISA § 204(g) ("the anti-cutback rule") and was only relevant to the Fund's tax-exempt status. Dkt. 101-9 at 3. Plaintiffs also contended that applicable I.R.S. regulations only prohibit continued in-service or covered employment under the CBA after retirement which does not extend to post-retirement non-covered employment like the Plaintiffs' non-Disqualifying Employment in managerial positions or as project managers and estimators, in which occupations Plaintiffs had engaged as allowed in Art. V Sec. 3. On July 23, 2012, the Fund rejected each of Plaintiffs' appeals. This action followed on January 25, 2013 ("*Metzgar* I").

In Defendants' Answer, filed May 16, 2014, Dkt. 30, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendants counterclaimed against each Plaintiff for the amount of the Special Early Retirement pensions paid erroneously by the Fund which Plaintiffs had not repaid as Defendants had requested as follows: Metzgar - $138,336.00; Mueller-$397,971.18; Noble-$381,489.48; O'Callaghan-$182,787.31; Puglia-$158,838.81; Kevin Reagan-$282,423.55; Ronald Reagan-$357,774.18.

Defendants' motion to dismiss for failure to state a claim (Dkt. 11) was denied by Decision and Order by Hon. Richard J. Arcara on May 2, 2014 (Dkt. 29), 2014 WL 1767715 (W.D.N.Y. May 2, 2014) *adopting Report and Recommendation*, Dkt. 20, 2014 WL 1757715, at *4 (W.D.N.Y. Feb. 14, 2014) (Schroeder, M.J.).

On August 26, 2016, Defendant Trustees further amended the Plan by deleting Section 10.4 relating to disclosures of pension information for participant beneficiaries to the Social Security Administration and I.R.S. (Dkt. 99-3 at 54), replacing it with a new provision (Dkt. 101-12 at 1-2) authorizing the Trustees to recover wrongfully paid benefit payments "as well as any benefit payment made in error," with 12% interest ("the August 2016 Amendment"). The amendment also permits Defendants to recover wrongfully paid benefits by reducing by 25% future pension benefit payments to a participant, or by legal action. *Id.* The August 2016 Amendment also requires a participant reimburse the Fund for attorneys and paralegal fees and other expenses incurred in collecting overpayments or mistaken payments of benefits. *Id.* By letters to each Plaintiff dated December 6, 2016 (Dkt. 101-13), the Fund demanded repayment of the alleged mistakenly paid Early Retirement pensions together with 12% interest as follows: Metzgar-$291,547.18; Mueller-$1,172,140.72; Noble-$1,225,562.28; O'Callaghan-$445,086.06; Puglia-$347,331.08; Kevin Reagan-$794,741.86; Ronald Reagan-$1,190,598.14. In this letter, the Fund advised Plaintiffs that if at the time Plaintiff legitimately, at age 65 or after terminating employment, were then receiving their pension payments from the Plan, Plaintiffs had not fully reimbursed the Fund for the payments mistakenly paid to Plaintiffs, the Fund would commence to withhold 100% of the first monthly pension payment due Plaintiffs and 25% of each monthly payment thereafter until the full amount of the pension overpayments plus interest were recovered by Defendants. Dkt. 101-13. Thereafter, the Trustees, not having received reimbursement from any Plaintiff as Defendants had requested, commencing with the Plaintiffs' January 2017 pension payment, withheld 100% of such payment and reduced by 25% each Plaintiff's subsequent monthly pension payment to which Plaintiffs, all

attaining age 65, were then entitled to receive. Plaintiffs appealed these adverse determinations on February 3, 2017. Defendants denied Plaintiffs' appeals by letter dated June 23, 2017. Dkt. 101-15. Plaintiffs commenced, on August 1, 2017, 17-CV-726V(F) ("*Metzgar* II"), another action against Defendants, former Trustees and a Plan administrator alleging violations of ERISA §§ 204(g), 502(a)(1)(B), 502(a)(3), 510 and 409(a), requesting declaratory and injunctive relief against further set-offs by Defendants' reducing Plaintiffs' monthly pension payments which set-offs continue.

## DISCUSSION

I.    Summary Judgment.

"Where 'parties file cross-motions for summary judgment, . . . each party's motion must be examined on its own merits, and in each case, all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Insurance Company v. Great American Insurance Company of New York*, 822 F.3d 620, 631 n. 12 (2d Cir. 2016) (quoting *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (brackets omitted)). In this case, as the parties do not request trial, the matter may be resolved on the parties' summary judgment motions.

   A.    Plaintiffs' First Claim.

       1.    Defendants' 2011 Determination Was Not An Amendment To The Plan for Purposes of § 204(g).

Plaintiffs' First Claim alleges that Defendants' suspension of Plaintiffs' Early Retirement Pensions unless Plaintiffs terminate further employment with Plaintiffs' employers violated the anti-cutback rule embodied in ERISA Section 204(g), 29 U.S.C. § 1054(g) ("§ 204(g)__" or "§ 1054(g)__"). Section 204(g)(1) provides that "[t]he

accrued benefit of a participant under a plan may not be decreased by an amendment to the plan . . .." § 1054(g)(1).[6]  This protection applies to Plaintiffs' Special Early Retirement pensions under § 1054(g)(2).  Specifically, Plaintiffs assert that Defendants' determination, communicated to Plaintiffs in Defendants' November 29 and December 27, 2011 correspondence to Plaintiffs (collectively "Defendants' 2011 Determination"), that unless Plaintiffs terminated Plaintiffs' current employment with their employers, all of which were participating employers, Plaintiffs' pensions would be suspended, constituted an amendment to the Plan which reduced Plaintiffs' pension benefits, including the possibility of Plaintiffs' post-retirement employment as a related benefit, prior to Defendants' 2011 Determination, subject to protection under § 204(g).  *See Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744-45 (2004) (plan amendment adopted by plaintiff's pension fund extending plan's prohibition on post-retirement employment to include plaintiff's supervisory position within the construction industry covered by plan after plaintiff's retirement as a carpenter curtailed value of plaintiff's pension benefit, including plaintiff's right to engage in post-retirement supervisory employment as had been permitted by the plan, accrued at time of plaintiff's retirement, and thus violated the anti-cutback rule).  Plaintiffs therefore contend that Defendants' demand, that Plaintiffs forgo Plaintiffs' post-retirement employment or suffer suspension of Plaintiffs' Special Early Retirement pension benefits, issued administratively by Defendants in Defendants' December 2011 letter to Plaintiffs based on Defendants' determination that Plaintiffs had not retired, constituted a plan amendment that improperly reduced Plaintiffs' monthly pension payments as well as the

---

[6]   A similar protection exists in the Internal Revenue Code.  *See* 26 U.S.C. § 411(d)(6)(A); *see also* 26 C.F.R. § 1.411(d)-4, A-7.

additional income Plaintiffs had been receiving from their respective post-retirement employments which, Plaintiffs assert, had accrued when Plaintiffs retired, upon approval of Plaintiffs pension applications, from Plaintiffs' covered employment under the Plan. Thus, the court first addresses whether Defendants' 2011 Determination that Defendants were required, under a correct interpretation and application of Art. V Sec. 1(d) of Plan (Dkt. 99-2 at 19) that Plaintiffs had not retired, to suspend Plaintiffs' pensions pursuant to Art. V Sec. 3(a)(i) (Dkt. 99-2 at 21-22) until Plaintiffs ceased their post-retirement employment, until reaching age 65, constituted an amendment in violation of § 204(g), ERISA's anti-cutback rule, as the basis for Plaintiffs' First Claim.

As noted, prior to February 2012, the Plan provided for a Special Early Retirement pension under Art. V Sec. 1(d) which requires a participant attain age 55 with at least 30 years of credited service to be eligible for such pension. The Special Early Retirement pension was also subject to suspension where the recipient returned to work as a steamfitter or plumber in the Western New York steamfitter and plumbing industry covered by the CBA if the recipient worked 120 hours in any month. Art. V Sec. 3(a)(i), Dkt. 99-2 at 21. However, under this provision employment after retirement in a managerial position or as a project manager or estimator did not subject a Special Early Retirement pension recipient to possible suspension of his monthly pension payment. *Id.* ("Sec. 3(a)(i)") ("non-Disqualifying Employment"). At the time Plaintiffs' pensions were approved by the Plan, the Plan Administrator understood recipients could under Sec. 3(a)(i) receive both a Special Early Retirement pension as well as engage in any of the three types of non-Disqualifying Employment immediately following approval of their pensions, without any actual temporal break in their employment with Plaintiffs' then participating employers, without being subject to a suspension of benefits

17

as required by Sec. 3(a)(i). Dkt. 101-8 (referencing Plaintiffs' Statement of Facts, Dkt. 101-2 ¶¶ 49-62). However, the fact that the Plan Administrator correctly understood that Plaintiffs would not be subject to any loss of benefits for having engaged in disqualifying employment after their retirements did not address whether the Plan's then criteria for the Special Early Retirement pension required Plaintiffs not continue any actual employment in order for the Fund to maintain its eligibility to operate as a tax-exempt ERISA pension fund under § 401(a), the applicable provision of the Internal Revenue Code for such tax benefit. However, upon learning that Defendants' approvals of Plaintiffs' pensions were in apparent non-compliance with the requirement of § 401(a), as construed by the I.R.S., that to remain qualified for tax-exempt status under § 401(a) a pension trust like the Fund in this case could not approve an early retirement pension, *i.e.*, one received before an employee reached 65, unless the recipient of the early pension from a tax-exempt pension trust completely and permanently terminated all employment, including any non-Disqualifying Employment, which may be permitted by a plan, with the employee's participating employer Defendants acted to immediately bring the Plan into compliance by demanding Plaintiffs and other employees who, like Plaintiffs, had been awarded Special Early Retirement pensions and whom Defendants were aware had continued employment with their employers, cease their post-retirement employment or incur a suspension of their pensions. To insure the Plan's future full compliance with this corrected understanding of § 401(a) as applied to Plaintiffs' pensions, the sole basis for Defendants' 2011 Determination, Defendants formally amended the Plan on February 10, 2012 to require future applicants for Special Early Retirement pensions cease any further employment. Plaintiffs therefore contend that the Defendants' 2011 Determination as stated in the

December 27, 2011 Letter to Plaintiffs constitutes a "De Facto Plan Amendment" prohibited by § 204(g), which "determination" Plaintiffs allege is the basis for Plaintiffs' alleged anti-cutback violations.  Dkt. 101-1 at 11; Dkt. 118-1 at 25 ("There can be no dispute that Defendants, in late 2011, applied conditions to Plaintiffs' receipt of benefits that were neither set forth in the terms of the Plan nor applied in the first [when approving Plaintiffs' pensions] instance."); Complaint Dkt 111-3 ¶ 31 ("The monthly early retirement benefits received by Plaintiffs prior to Defendants' December 2011 and subsequent determinations that Plaintiffs did not actually retire . . . constitute accrued benefits [protected by § 204(g)]."); ¶ 32 ("Defendants' determination that each of the Plaintiffs did not actually retire because each of the Plaintiffs continued working in Non-Disqualifying Non-Plan employment subsequent to his retirement constitutes a Plan amendment."); ¶ 41 ("All of the Plaintiffs will continue to be harmed until and unless the Defendants are estopped from refusing to recognize Plaintiffs' original dates of retirement pre-December 2011.").  Thus, regardless of the fact that the terms of the alleged "De Facto" amendment to the Plan are based on the administrative "determination" made by Defendants in December 2011, the substance of which Plaintiffs also allege was then added to the Plan as a formal amendment in February 2012, Defendants' November and December 2011 interpretations of the requirements of the Plan under Art. V Sec. 1(d) for Plaintiffs' pensions are the basis for Plaintiffs' anti-cutback claim pursuant to § 204(g).  Accordingly, at the threshold, the court considers whether Defendants' 2011 Determination constitutes a plan "amendment" as that term appears in § 204(g).

In support of Defendants' contention that Defendants are entitled to summary judgment on Plaintiffs' claim under § 204(g), Defendants rely on *Kirkendall v.*

*Halliburton, Inc.*, 2011 WL 2360058, at *10 (W.D.N.Y. June 9, 2011) (Curtin, J.), *vacated in part, and affirmed in part*, 707 F.3d 173 (2d Cir. 2013), *cert. denied*, 571 U.S. 882 (2013) ("*Kirkendall*"). *See* Dkt. 100 at 27-28. In *Kirkendall*, the court held that the term "amendment of the plan" as stated in § 204(g) refers only to "<u>actual</u> <u>amendments</u> to the terms of the plan, <u>not</u> to a plan administrator's <u>interpretation</u> of plan provisions which results in a reduction of benefits." *Kirkendall*, 2011 WL 2360058, at *10. Plaintiffs do not respond directly to this contention. *See* Dkt. 118-1 at 23-24 (citing caselaw holding that administrator's interpretation of plan reducing employee pension benefits are *de facto* amendments subject to § 204(g)). In reaching this conclusion, Judge Curtin surveyed applicable circuit caselaw holding that § 204(g)'s "protections . . . apply only to actual amendments to the terms of a Plan, not to an interpretation of terms [by a plan administrator] which amounts to a constructive amendment of the Plan." *Kirkendall*, 2011 WL 2360058, at *8 (citing caselaw). In *Kirkendall*, Judge Curtin particularly relied on the reasoning of the opinion in *Stewart v. Nat'l Shopmen Pension Fund*, 730 F.2d 1552 (D.C.Cir.), *cert. denied*, 469 U.S. 834 (1984), in which the court stated that as it appears in § 204(g), "[T]he word 'amendment' is used as a word of limitation. Congress did *not* state that any change would trigger the . . . provision[ ]; it stated that any change by *amendment* would do so . . .." *Stewart*, 730 F.2d at 1561 (italics in original). In *Stewart*, as quoted by Judge Curtin, the D.C. Court of Appeals further stated that

> The plaintiffs' construction would stretch the term "amendment" nearly to the breaking point. Under their construction, reducing *any* benefits, authorized by the plan, of persons whose rights are vested, would constitute an "amendment." While speculation regarding why Congress chooses specific language is not always fruitful, it should be noted that had Congress *meant* [Section 204(g)] to apply to "any *reduction* in benefits to vested participants," it could easily have said so.

*Kirkendall*, 2011 WL 2360058, at *9 (quoting *Stewart*, 730 F.2d at 1561) (italics in original and citing *Dooley v. American Airlines, Inc.*, 797 F.2d 1447, 1451-52 (7th Cir. 1986)) (applying *Stewart's* "common sensical rule of law" to find plan fiduciaries' "valid exercise of a provision which was already firmly ensconced in the pension document" did not amount to amendment of the plan in violation of Section 204(g) and citing caselaw)).

Here, the provisions of the Plan upon which Plaintiffs rely for their First Claim are found in Art. V Sec. 1(d) (Dkt. 99-2 at 19-20) ("Any employee <u>who</u> <u>retires</u> on or after June 1, 1998 . . ..")[7] under which Plaintiffs qualified under the Rule of 85 (age 55 plus 30 years of service) for a Special Early Retirement pension which was also subject to later suspension under Art. V Sec. 3(a) in the event of any subsequent employment by the retiree "(A) in an industry covered by the Plan . . ., (B) in the geographic area covered by the Plan . . ., and (C) in any occupation in which the Participant worked under the Plan . . .." Dkt. 99-2 at 22 (defined as "Disqualifying Employment"). Such restrictions on post-retirement Disqualifying Employment were included in the Plan, originally adopted May 1, 1999, and restated on March 28, 2002, effective as of May 1, 2002 to include subsequent amendments. Dkt. 99-2 at 3, 54. The Plan was subsequently restated, on December 16, 2009, effective May 1, 2009, Dkt. 99-3 at 2, 65, incorporating amendments adopted since the 2003 Restatement and adopting a different section decimal-based number system, but retaining the same language authorizing Special Early Retirement pensions of Art. V Sec. 1(d).[8] Thus, as with the

---

[7]  Unless otherwise indicated all underlining is added.
[8]  Plaintiffs state that inasmuch as all Plaintiffs, except Metzgar who "retired" under the 2009 Restated Plan, "retired" under the 2002 Restated Plan with "virtually identical language," with the 2001 Restated Plan for ease of reference, reference should be to the 2002 Restated Plan. Dkt. 118-1 at 10 n. 8. Accordingly, the court's references are to the 2002 Restated Plan.

provision in question in *Stewart*, these provisions were equally well-ensconced, *see Dooley*, 797 F.2d at 1451-52, in the Plan document when Plaintiffs applied for their Special Early Retirement pensions commencing in 2002 with Plaintiff Ronald Reagan.

As noted, Facts, *supra*, at 6, an exception in the Plan to the prohibition on continued employment with a contributing employer following the Plan's approval of Plaintiffs' retirement pensions provided that "employment in a managerial position, project manager, or estimator for an Employer shall not be deemed 'Disqualifying Employment.'"  Significantly, nothing in the text of Art. V Sec. 1(d) ("Any employee who retires . . ..") indicates that the term "retires" includes any expectation the employee intends to continue employment with a contributing employer in any form of employment whether such future employment is subject to suspension of pension benefits under Art. V Sec. 3(a) or not.  As stated in Defendants' 2011 Determination, *see, e.g.*, Dkt. 99-13 at 3, Dkt. 99-14 at 2, because Plaintiffs, upon commencing their Special Early Retirement pensions, continued to work for a participating employer, albeit in non-Disqualifying Employment that did not require suspension of a pension under the terms of the Plan, Defendants' action to suspend Plaintiffs' pensions in order to assure the Plan's compliance with § 401(a) and preserve the Plan's tax-exempt status, was an administrative interpretation of existing Plan language, specifically, the phrase "[a]ny employee who retires . . .." Art. V Sec. 1(d) ("Any employee who retires . . ..") to include § 401(a)'s required permanent severance of any form of employment service after retirement to support distribution of an early retirement benefit, and is therefore not an amendment to the Plan necessary to support an action pursuant to § 204(g). Significantly, as the terms "retire" or "retirement" were not defined by the Plan, Dkt. 101-2 ¶ 30 ("The Plan does not define the term 'retire'") and a perusal of the Plan yields no

definition of the term "retirement;" *see also* Dkt. 118-1 (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment) at 10 ("[T]he terms of the Plan in effect at the time that each Plaintiff qualified for early retirement do not explicitly define 'retirement'").  Defendants' 2011 Determination therefore did not alter an existing term of the Plan nor did it add any provision to the Plan; rather, it construed and applied the relevant terms so as to comply with previously existing and applicable Internal Revenue Code requirements, specifically § 401(a).  In sum, Defendants' prior understanding of the term "retires" and "retirement" as used in the Plan to allow for continued employment by an employee upon receiving an early retirement pension was legally erroneous, and its correction in Defendants' December 2011 Determination did not effect an amendment to an existing term of the Plan within the scope of § 204(g).

As noted, the Second Circuit's decision affirmed the District Court's dismissal of plaintiff's § 204(g) claim in *Kirkendall*, *see Kirkendall*, 707 F.3d at 184, although recognizing the existence of other judicial interpretations of the term "amendment" as used in § 204(g) to include "an erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as a 'amendment' for purposes of ERISA  § 204(g)," *Kirkendall*, 707 F.3d at 182-83 (quoting *Hein v. FDIC*, 88 F.3d 210, 216 (3d Cir. 1996) and Treas. Reg. § 1.411(d)-4, A-7 (stating that a plan allowing an employer to deny a protected benefit by the exercise of administrative discretion violates Internal Revenue Code § 411(d)(6) a provision similar to § 204(g)); *see also Hunter v. Caliber System, Inc.*, 220 F.3d 702, 712 (6th Cir. 2000) ("'<u>erroneous</u> interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as an 'amendment' for purposes of ERISA § 204(g)'")  (underlining added) (quoting *Hein*, 88 F.3d at 216)).  *See also*

*Cottillion v. United Refining Co.*, 2013 WL 1419705, at *9 (W.D.Pa. Apr. 8, 2013) (erroneous reinterpretation to correct calculation of monthly pension payment using actuarial method for early retirement pensions previously awarded without such actuarial computation with a resultant reduction in the amount of the monthly pension payment constituted an "implicit" plan amendment for § 204(g) purposes), *aff'd*, 781 F.3d 47, 58 (3d Cir. 2015) (citing *Hein*, 88 F.3d at 216).  Nevertheless, despite such conflicting views concerning the meaning and scope of the term "amendment" as used in § 204(g), the Second Circuit in *Kirkendall* found no need to resolve such conflicting opinions on this threshold issue because the court found plaintiff's claim in that case was based on an alleged miscalculation of benefits, not an administrative reinterpretation of any terms of the plan itself potentially constituting an informal amendment of the plan as Plaintiffs assert here. *See Kirkendall,* 707 F.3d at 184. In *Kirkendall* the court therefore stated it would "leave for another day the question of whether a constructive amendment [as found in *Hein*] can trigger the requirements of § 204(g)." *Id.*  Based on the undersigned's research, that day has not arrived and this court accordingly finds that Judge Curtin's holding in *Kirkendall* that 'constructive' amendments based on alleged erroneous administrative determinations under a plan as found by the Third Circuit in *Hein, supra,* and the Sixth Circuit in *Hunter, supra*, to be sufficient to support a § 204(g) claim, and are not plan amendments subject to relief under § 204(g), represents controlling law on the issue in this Circuit.  Significantly, Plaintiffs cite to no Second Circuit or district court decisions within the Second Circuit reaching a contrary result.  As such, Defendants' 2011 Determination suspending Plaintiffs' pensions unless Plaintiffs forgo continued employment with their former employers before reaching age 65, is not an amendment to the Plan subject to review

under § 204(g), and Defendants' motion for summary judgment on Plaintiffs' First Claim (Dkt. 98) should therefore be GRANTED and Plaintiffs' motion on this claim (Dkt 101) should be DENIED.

      2.      <u>Defendants' 2011 Determination Resulting in a Suspension of Plaintiffs' Pensions and Loss of Plaintiffs' Employment Income Was Not a De Facto Plan Amendment Subject to § 204(g)</u>.

Plaintiffs' contend that while Defendants suspended Plaintiffs' pensions based on Defendants' 2011 Determination prior to the formal amendments to the Plan adopted in February 2012, Defendants' administrative action nevertheless constituted a *de facto* plan amendment reducing Plaintiffs' accrued benefits and, as such, is actionable under § 204(g). Dkt. 118-1 at 24-25 (citing *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan*, 169 F.Supp.3d 735, 751 (M.D.Tenn. 2015), *aff'd*, 840 F.3d 267 (6th Cir. 2016); *DiCioccio v. Duquesne Light Co.*, 911 F.Supp. 880, 899 (W.D.Pa. 1995); *Hein v. F.D.I.C.*, 88 F.3d 210, 216 (3d Cir. 1996) and *Hadden v. Consol. Edison Co. of N.Y., Inc.*, 312 N.E.2d 445, 448 (N.Y. 1974)). In these cases, an administrator's "reinterpretation of plan language," *Deschamps,* 169 F.Supp.3d at 751, to exclude plaintiff's occupation of maintenance manager from coverage in defendants' pension plan, despite evidence that defendants had considered plaintiff's job title as one within the plan for 16 years prior to defendants' later attempt to exclude plaintiff's job, which earlier inclusion defendants claimed was a "clerical mistake," *id.,* was held to be an "amendment" within the meaning of § 204(g). In affirming the district court's finding defendants' reinterpretation of the plan to exclude plaintiff's job title from plan coverage to correct an alleged clerical error was a *de facto* amendment for § 204(g) purposes, the Sixth Circuit Court of Appeals held that such later administrator's interpretation

constituted a plan amendment for purposes of § 204(g) where the original interpretation including plaintiff's position within the coverage of plan was not "untenable" based on the actual language of the plan describing the specific job classification, supervisor, under which plaintiff had been considered to be a covered employee. *Deschamps*, 840 F.3d 267, 280 (6th Cir. 2016). Likewise, in *DiCioccio*, the court found defendant's attempt to exclude employee income realized from the employees' exercise of stock options, which the employer had granted on a one-time basis, from employees' compensation upon which employees' pensions were to be calculated under the plan, to constitute a *de facto* amendment despite defendants' position that defendants' plan sponsor never intended such extra incentive income to be considered within the plan's definition of compensation for pension plan purposes when granting the stock options as a one-time boost to employees' compensation to enhance employee morale, and that including the income represented "a mistake in practice which had inadvertently 'developed'" which the administrator's discretionary interpretation, although after the fact, was intended to correct. *DiCioccio*, 911 F.Supp.3d at 895. In reaching its conclusion, the court relied on the past practice of several of the employer's senior human resource and employee benefits managers who had previously considered the stock option income to be within the plan's definition of compensation. *Id.* at 899. In *Hein*, the court stated that "[a]n erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as "an amendment" for the purposes of ERISA § 204(g)." 88 F.3d at 216. In *Hein*, the court reversed the district court's award of early retirement benefits for plaintiff under § 204(g) despite the fact that plaintiff had not attained age 55 as required by the plan prior to his termination from his original employer, a bank, which had resulted from his employer's

take-over by defendant, the F.D.I.C., and subsequent asset sale to an unrelated bank. In *Hadden*, the court held that defendant's post-retirement interpretation of defendant's pension plan to cancel retroactively plaintiff's pension based on plaintiff's pre-retirement criminal misconduct was without support in any existing provision of the plan at the time of plaintiff's retirement and constituted an unauthorized amendment.[9]  Thus, whether a subsequent administrative interpretation of a plan intended to overcome an alleged prior mistaken or erroneous interpretation by the plan administrator resulting in an approval of pension benefits constitutes a *de facto* plan amendment for § 204(g) purposes depends on whether the initial interpretation or practice which approved the benefit to which the subsequent corrective interpretation is directed, was reasonable or tenable based on the existing provisions of the plan when the benefits at issue were approved. *See Deschamps*, 840 F.3d at 280 (finding that defendant's determination that plaintiff's position was included in definition of a pension eligible occupation was not "untenable . . . under the language of the Plan.") (citing *Redd v. Bhd. of Maint. Way Emps. Div. of Int'l Bhd. of Teamsters*, 2010 WL 1286653, at *8 (E.D. Mich. Mar. 31, 2010).  As the court of appeals in *Deschamps* stated, *"Redd* further concluded that to succeed on a [§ 204(g)] claim, plaintiffs must establish that the benefits they received prior to the alleged amendment were based on a 'tenable' or 'permissible reading of the terms of the Plan.'" *Deschamps*, 840 F.3d at 280 (quoting *Redd*, 2010 WL 1286653, at **9-10).  *See also Cottillion*, 781 F.3d at 57-58 (plan administrator's later attempt to interpret plan to require actuarial computation of plaintiff's early retirement pension as allegedly required by federal tax law constituted an informal plan amendment actionable under § 204(g)

---

[9]  *Hadden*, decided May 1, 1974, is of limited authority as it is a state court decision issued based on state contract law, now pre-empted by ERISA, *see* 29 U.S.C. § 1144(a), following its enactment effective September 2, 1974.

when plan language at time of plaintiff's retirement provided no indication that actuarial-based reduction in early retirement pension was required).

Whether the plan administrator's award of benefits was based on such a "tenable" or "permissible" reading of the plan will be reviewed under an arbitrary or capricious standard. *Redd*, 2010 WL 128665, at *10. Where, as here, the Trust grants discretionary authority to the Defendant Trustees, a plan's fiduciary's decision such as in this case made by Defendants, may be judicially voided as arbitrary or capricious or contrary to law, "only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995) (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (2d Cir. 1993), *abrogated on other grds* by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)). "This standard is highly 'differential,' and 'the scope of judicial review is narrow.'" *Roganti v. Metropolitan Life Ins. Co.*, 786 F.3d 201, 210-11 (2d Cir. 2015) (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003)). In this case, Defendants' prior practice of approving Special Early Retirement pensions where recipient employees intended to continue employment was based on a fundamental misunderstanding of Internal Revenue Code requirements applicable to tax-exempt pension trusts, for such early retirement pensions and therefore was not "tenable" or "permissible" under the relevant provisions of the Plan at the time of such approvals such that Defendants' misunderstanding resulted in an improper distribution of pension benefits thereby jeopardizing the tax-exempt status of the Fund. Thus, Defendants' reinterpretation or corrective interpretation of the Plan by Defendants' 2011 Determination to require the suspension of Plaintiffs' Special Early Retirement pensions or termination of Plaintiffs' non-Disqualifying Employment in order to fully comply with §

401(a) was not the result of an arbitrary or capricious decision, and Defendants'

subsequent interpretation of the relevant provisions of the Plan requiring Plaintiffs forgo

such continued employment or suffer suspension of Plaintiffs' pension payments

therefore did not constitute a *de facto* amendment of the Plan.

First, as trustees, Defendants are required by the explicit terms of the Trust to

comply with ERISA and the Internal Revenue Code so that "the Trust and Plan of

Benefits . . . will be structured and operated to qualify for approval by the Internal

Revenue Service as a tax-exempt Trust and Plan to ensure that the Employer

contributions to the Fund are proper deductions for income tax purposes . . ..  It is the

intention of the Trustees to fully comply with all requirements of the Internal Revenue

Code." Trust Art. VII, Section 4 (Dkt. 99-1 at 29).  Under ERISA, ERISA pension funds

like the Fund in this case are to be administered under "the common law of trusts to

define the general scope of their authority and responsibility."  *Central States, Southeast

and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570

(1985).  ERISA requires a plan fiduciary to "discharge [their] duties with respect to a

plan solely in the interest of the participants and beneficiaries . . . for the sole purpose of

providing benefits to participants . . . .."  28 U.S.C. § 1105(a)(1)(A).  It is basic that the

duty of a trustee is "to administer the trust, diligently and in good faith, in <u>accordance</u>

<u>with</u> <u>the</u> <u>terms</u> <u>of</u> <u>the</u> <u>trust</u> <u>and</u> <u>applicable</u> <u>law</u>."  Restatement (Third) Trusts § 76(A)

(2007).  Moreover, a fiduciary plan administrator "is [not] precluded from reconsidering

an award of benefits to correct its own error, so long as the plan administrator

specifically justifies the change as the correction of an earlier mistake and the record

supports that decision."  *Serbanic v. Harleysville Life Ins. Co.,* 325 Fed.Appx. 86, 91 (3d

Cir. Apr. 30, 2009); *see also Oster v. Barco of California Employees' Retirement Plan,*

869 F.2d 1215, 1219 (9th Cir. 1988) (no abuse of discretion where "[t]he Committee's decision to modify its policy appears to be reasonable").

In this case, Plaintiffs applied for Special Early Retirement pensions under Art. V Sec. 1(d) of the Plan which states in relevant part that "any employee who underlines . . . after his fifty-fifth (55th) birthday and whose combined age and years of Special Service shall equal eighty-five (85) or more, shall be entitled to a monthly pension equal to his Accrued Benefit on the date he makes application for Special Early Retirement." Dkt. 99-2 at 19. The Accrued Benefit under the Plan is the monthly benefit payable to the employee at age 65 calculated in accordance with Art. V Sec. 1(a). Dkt. 99-2 at 15; Art. 1 Sec. 1 (Dkt. 99-2 at 4). Art. V Sec. 1(a) refers to the vested participants who may "retire" on or after age 65. Dkt. 99-2 at 16. This provision also provides that "retirements" at age 65 which occur after May 1, 2000, receive "a monthly pension payable over his [the employee's] lifetime" calculated in accordance with that section. Dkt. 99-2 at 16. As noted, the terms "retire" and "retirement" are not defined by the Plan. *See* Discussion, *supra*, at 7, 22. It is also undisputed that Plaintiffs intended to continue to be employed with their respective employers albeit in occupations that would not subject Plaintiffs to a suspension of pension benefits under Art. V Sec. 3 (Dkt. 99-2 at 22) for Disqualifying Employment. Further, nothing in Art. V Sec. 1(d) defines an employee's eligibility for the Special Early Retirement pension with reference to whether the employee intends to engage in non-Disqualifying Employment such as those occupations in which Plaintiffs intended to be employed when Plaintiffs applied for the Special Early Retirement pensions and in fact were employed upon receiving their pensions. In approving Plaintiffs' pensions without regard to whether Plaintiffs continued to be employed in non-Disqualifying Employment, Defendants acted in the

mistaken belief that such distributions were permissible under § 401(a) and would not impair the tax-exempt status of the Plan as non-compliant distributions.[10]  As such, if Defendants' prior interpretation of the Plan and past practice in approving Plaintiffs' pensions in relation to the requirements of § 401(a), knowing Plaintiffs intended to engage in continuing employment with a participating employer, thereby placed the Fund in violation of the Internal Revenue Code jeopardizing the Fund's tax-exempt status in violation of the specific provisions of the Trust requiring Defendants to operate the Fund and Plan so as to assure such compliance and the Fund's future tax-exempt status was not "tenable" or "permissible," *Deschamps*, 840 F.3d at 280, Defendants' subsequent interpretation in 2011 represented by Defendants' 2011 Determination to bring the Plan into compliance with § 401(a), if reasonable, does not constitute a *de facto* amendment to the Plan subject to § 204(g).  A brief overview of the requirements of § 401(a), applicable I.R.S. regulations, rulings, and relevant caselaw demonstrates Defendants' prior misunderstanding of § 401(a)'s requirements as applied to Defendants' administration of the Special Early Retirement pension benefit and approval of Plaintiffs' pensions under the Plan was not reasonable or tenable, and that Defendants' 2011 reinterpretation and corrective actions were not arbitrary or capricious.

26 U.S.C. § 401(a) ("§ 401(a)"), enacted as part of the Internal Revenue Code of 1954, authorizes and states the requirements for tax-exempt trusts created for the

---

[10]   There are several adverse consequences of significance to employees and employers in the event a pension plan's tax-exempt status is revoked including the disallowance of deductions for the employer's contributions until the amount of its contributions are included in employees' income, and payment of taxes on a trust's earning. *See* Dkt. 100 at 40 including I.R.S., Tax Consequences of Plan Disqualification (2018), http://www.irs.gov/retirement-plans/tax-consequences-of-plan-disqualification, *last visited* March 28, 2019.

exclusive purpose of providing pension and other benefits for retired employees.  26 C.F.R. § 1.401-1(a)(2)(i) ("§ 1.401-1(_)") states that § 401(a) "<u>prescribes</u> <u>the</u> <u>requirements</u> which <u>must</u> <u>be</u> <u>met</u> <u>for</u> <u>qualification</u> [as a tax-exempt entity] of a trust forming part of a pension . . . plan."  As relevant, Treasury Regulation § 1.401-1(b)(1)(i) further states that

> "A pension plan within the meaning of Section 401(a) is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, <u>after</u> <u>retirement</u>.

26 C.F.R. § 1-401-1(b).

Section 401(a) therefore further requires a distribution of pension benefits to employees to begin not later than at age 70½ or the calendar year when the employee "retires."  § 401(a)(9)(A)(i); § 401(a)(9)(C)(i)(II).

Additionally, 26 C.F.R. § 1.410(a)-7(b)(2) provides that the<u> term</u> "<u>severance</u> <u>from</u> <u>service</u>" is the date "on which the employee quits, <u>retires</u>, is discharged or dies," or "remains absent from service."  26 C.F.R. § 1.410(a)-7(b)(6) provides that an employee's "period of service" is the "period of service commencing on the employee's employment . . ." "ending on the severance from service date."  26 C.F.R. 1.409A-1(h)(1)(i) states in relevant part "[a]n employee <u>separates</u> <u>from</u> <u>service</u> with the employer if the employee . . . <u>retires</u>, or <u>otherwise</u> <u>has</u> <u>a</u> <u>termination</u> <u>of</u> <u>employment</u> <u>with</u> <u>the</u> <u>employer</u>."  Section 1.409A-1(h)(1)(ii) provides as relevant

> whether a termination of employment has occurred is determined based on whether the facts and circumstances indicate that the employer and employee reasonably anticipated that <u>no</u> <u>further</u> <u>services</u> <u>would</u> <u>be</u> <u>performed</u> <u>after</u> <u>a</u> <u>certain</u> <u>date</u> . . ..

Thus, I.R.S. regulations which define the requirements for administration of a tax-exempt trust under § 401(a) make clear that a qualified pension trust shall begin pension payments upon an <u>employee's</u> <u>retirement</u> and that such <u>retirement</u> occurs when the employee <u>terminates</u> <u>his</u> or <u>her</u> <u>employment</u> with an employer <u>with</u> <u>the</u> <u>expectation</u> <u>that</u> <u>no</u> <u>further</u> <u>services</u> will be performed by the employee for the employer.

I.R.S. rulings also make clear that a pension trust established under § 401(a) may not distribute benefits and retain its tax-exempt status if pension benefits are distributed to employees prior to severance of employment. *See* Rev. Ruling 74-254, 1974-1 C.B.91 (qualified pension plan under § 401(a) may not permit distributions "prior to <u>termination</u> <u>of</u> <u>employment</u>"); Rev. Ruling 71-437, 1971-2 C.B.185 ("A pension plan does not qualify [for tax-exempt status] under § 401(a) if it permits distributions of the employer's contributions or increments therein <u>prior</u> <u>to</u> <u>severance</u> <u>of</u> <u>employment</u> . . .."); *see also* I.R.S. Notice 07-69, 2007-35 C.B. 468 ("[A]n early retirement benefit is generally only permitted to commence with an annuity starting date <u>that</u> <u>is</u> <u>after</u> <u>severance</u> <u>from</u> <u>employment</u> (except to the extent permitted under § 401(a)(36) . . ..), 2007 WL 2285348, at *6. Moreover, in the case of early retirement, *i.e.*, in this case prior to age 65, § 401(a)(36), enacted in 2006, permits an employee to receive an early retirement pension from a tax-exempt pension trust at age 62 where the employee intends to continue working if the trust elects to grant such an early retirement pension. Thus, by necessary implication, § 401(a)(36) recognizes that early retirements such as those received by Plaintiffs where the employee intends to engage in employment after retiring are permissible only at age 62 and not, as here, at age 55. In this case, the Plan has not adopted § 401(a)(36) and established age 65 as the Normal Retirement Date. Plan Art. I(23) (Dkt. 99-2 at 10); Art. I(34) (Dkt. 99-2). As noted, Facts, *supra*, at

7-9, it is undisputed that each Plaintiff, at the time such Plaintiff applied for his Special Early Retirement pension, had an understanding with Plaintiff's then current employer that Plaintiff would continue employment after the date of Plaintiff's retirement albeit in a job title that would not be subject to a suspension of Plaintiff's pension under Art. V Sec. 3(a), *i.e.*, in non-Disqualifying Employment.  As is evident from the applicable I.R.S. regulations, rulings, and notice such an intention is contrary to the requirements for a valid retirement compliant with § 401(a).  The prerequisite to a valid retirement under § 401(a) that the employee intends to sever all further employment also furthers congressional policy of assuring that distributions from tax-exempt pension trusts be for the purpose of supporting retirement and not other purposes such as estate or income enhancements.  "The Code [§ 401(a)] attempts to ensure that those funds that have been accumulated with the aid of the loss of tax revenue associated with tax deferral are in fact actually used for retirement purposes and not for estate or other purposes." Pamela D. Perdue, Esq., *The Ins and Outs of Retirement Plan Distributions,* TAXES – THE TAX MAGAZINE, Feb. 2009 at 63.

Additionally, in a Private Letter Ruling issued Nov. 25, 2011, I.R.S. Priv. Ltr. Rul. 201147033, 2011 WL 5893533 (Nov. 25, 2011) ("the PLR") (Dkt. 100 at 32), in applying the applicable regulations and judicial definitions of the term "retirement" as it is used in § 401(a), the I.R.S. stated unequivocally that "if both the employer and employee know at the time of 'retirement' that the employee, with reasonable certainty, continues to perform services for the employer, a termination of employment has not occurred upon 'retirement' and the employee has not legitimately retired [for purposes of § 401(a)]." Dkt. 100 at 36 (citing *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 58 (7th Cir. 1993) ("In common parlance, retire means to leave employment after a period of service." (citing

Webster's Ninth New Collegiate Dictionary 1007 (1986) (to retire is "to withdraw from one's position or occupation: to conclude one's working or professional career."))).  In the PLR the I.R.S. concluded that where, as here, employees applying for early retirement pension benefits "would not actually separate from service and cease performing services for the employer when they 'retire' these 'retirements' would <u>not</u> constitute a legitimate basis to allow <u>participants</u> <u>to</u> <u>qualify</u> <u>for</u> <u>early</u> <u>retirement</u> <u>benefits</u>" and "<u>will</u> <u>violate</u> section 401(a) of the [Internal Revenue] Code and <u>will</u> result in <u>disqualification</u> <u>of</u> <u>the</u> <u>Plan</u> under section 401(a) of the Code."  Dkt. 100 at 37 (underlining and bracketing added).  Thus, as originally drafted and administered, the Plan permitted Special Early Retirement pensions to be awarded to employees including Plaintiffs who intended to and in fact engaged in continued employment after receiving such pensions as Fund distributions without having fully retired in violation of § 401(a) thereby placing the tax-exempt status of the Fund in jeopardy contrary to the terms of the Trust and requirements of applicable tax and trust law.  Such a remarkable misunderstanding of § 401(a)'s requirement resulting in an erroneous interpretation of the term "to retire" or "retirement" as used in Art. V Sec. 3 and improper distribution of Plaintiffs' pensions can hardly qualify as a "tenable" or "reasonable" interpretation of the Plan.

Plaintiffs contend that to the extent § 401(a) and I.R.S. regulations construing § 401(a) refer to an employee's required retirement from employment, such employment is limited to "covered employment" under the Plan, *i.e.*, employment in the plumbing and steamfitters trade for which employer contributions to the Plan are required, (citing Art. 1 Sec. 7) (Dkt. 99-2 at 6) (The term "Covered Employment" shall mean employment of an Employee by a Contributing Employer") and does not extend to non-Disqualifying

Employment for which contributions to the Fund are not required thus, according to Plaintiffs' theory, Plaintiffs did retire consistent with § 401(a).  Dkt. 118-1 at 15-16.

Plaintiffs point to ERISA, 29 U.S.C. § 1002(2)(A) ("§ 1002(2)(A)") which defines a tax qualified pension plan as one providing "(i) retirement income to employees or (ii) results in deferral of income by employees for periods extending to the <u>termination of covered employment or beyond</u>."  *Id.*  However, the conclusion Plaintiffs draw from this, *viz.* that "'retirement' in the context of a tax qualified pension plan does not mean that a participant . . . must terminate all employment before receiving his pension, but, instead, that he must simply terminate 'covered employment,' to wit, the work [through covered employment] that accrues benefits under the plan," *id.,* does not follow.  First, § 1002(2)(A), the purpose of which is to guide whether a give employment related benefit is one protected by ERISA, *see, e.g.*, *Pasternack v. Shrader*, 863 F.3d 162, 168-69 (2d Cir. 2017) (under § 1002(2)(A) Stock Rights Plan not an "employee pension benefit plan" subject to ERISA) does not carry the relevant legal effect as does § 401(a) as the latter is the provision of the tax code which controls the availability of a tax exemption for a pension trust, not § 1002(2)(A).  Further, nothing in the text of § 401(a) recognizes that the term "retirement" refers exclusively to a withdrawal from work in covered employment as its prerequisite for a valid distribution of early retirement pension payments.  In fact, in submitting the VCP, Defendants included in its description of Defendants' error that in approving Plaintiffs' Special Early Retirement pensions Defendants erroneously believed that a withdrawal "<u>from Covered Employment</u>" by a participant with an expectation that the employee would continue working in non-covered employment was satisfactory compliance with applicable regulations, specifically § 401(a)-(1)(b)(i) and § 1.410-1(i) "which require[ ] a separation from

employment with all employers contributing to the Plan." Dkt. 99-16 at 21. Significantly, a careful reading of the I.R.S.'s acceptance of the VCP ("Compliance Statement" Dkt. 99-17 at 3, 8) indicates the I.R.S. found Defendants' statements of tax code requirements applicable to Defendants' approval of Plaintiffs' Special Early Retirement pensions to represent a misunderstanding by Defendants of such requirements. *See* Dkt. 99-17 (*passim*). Nor did the I.R.S. in its approval of the VCP's statement of Defendants' "failures" and corrective action, *i.e.*, requiring Plaintiffs desist in engaging in Plaintiffs' non-covered employment or suffer suspension of their pensions, to be based on an erroneous understanding by Defendants of the basis for Defendants' statement of failures, *i.e.*, non-compliance with § 401(a), and Defendants' need for corrective action to avoid any loss of the Fund's tax-exempt status. Nor does the I.R.S.'s discussion of the issue in the PLR indicate that whether an employee's early retirement pension violates § 401(a) turns on whether the employee terminates covered as opposed to non-covered employment under a plan, as Plaintiffs assert, while at the same time receiving a distribution of early retirement pension benefits.

A similar argument was raised by plaintiff in *Meakin v. California Field Ironworkers Pension Trust*, 2018 WL 405009, at *7 (N.D.Cal. Jan. 12, 2018) to support a finding that plaintiff, who had received early retirement benefits while engaging in continuing employment with a participating employer, had legitimately retired by moving from covered to non-covered employment such that the plan was compliant with § 401(a). *See Meakin*, 2018 WL 405009, at *7. The court in *Meakin* rejected this contention noting that given defendants' fiduciary obligation to construe the plan so as to preserve its tax-exempt status it was <u>reasonable</u> for defendants to conclude I.R.S. requirements under § 401(a) could not be met based on such a distinction. *Id.*

Significantly, here, in accepting Defendants' interpretation of § 401(a) as elaborated in the PLR, the I.R.S. had no objection to Defendants' interpretation and corrective action as constituting a violation of 26 U.S.C. § 411(d)(6), a provision "substantially identical" to § 204(g).

Plaintiffs' reliance on *Heinz* (Dkt. 118-1 at 14), is misplaced. In *Heinz*, unlike in this case, defendants had amended the plan after plaintiffs retired and continued work in an occupation not previously included in disqualifying employment, to include such employment as disqualifying and subjecting Plaintiffs' early retirement pensions to suspension, a new restriction on plaintiff's accrued pension benefit the Supreme Court held violated the anti-cut back rule. *Heinz*, 541 U.S. at 744-45. Here, unlike what defendants did in *Heinz*, Defendants did not broaden the scope of non-disqualifying employment to include that in which Plaintiffs were engaged. Rather, Defendants determined that by Plaintiffs' continued employment upon Plaintiffs' putative early retirements, Plaintiffs' pensions, as approved by Defendants, violated § 401(a) and therefore could not qualify as having legitimately accrued precluding suspension of Plaintiffs' pensions or termination of Plaintiffs' post-retirement employment, an issue not presented in *Heinz*. *See* Dkt. 118-1 at 14 n. 11 (noting that in *Heinz* neither party nor I.R.S. asserted plaintiffs "never actually retired because [they] did not have a permanent intention to never perform any kind of work for a contributing employer again"). Specifically, in *Heinz*, the question present on *certiorari* was "whether a pension plan amendment that is authorized by ERISA Section 203(a)(3)(B) is nonetheless prohibited by Section 204(g) to the extent that it applies to previously accrued benefits." 2004 WL 110581 (2004). Plaintiffs' contention that approval of early retirement pensions, such as those approved for Plaintiffs in the circumstances presented in this case, are permitted

under § 401(a) provided the employees continue to work in non-covered employment as defined in the Plan is therefore without merit.

Two recent cases, addressing similar questions regarding a plan's determination that its early retirement pensions were improperly approved in violation of § 401(a), also support this conclusion. In *Meakin,* 2018 WL 405009, at * 1 the plan permitted early retirement pensions similar to that provided by the Plan in this case notwithstanding that the employees continued to work in non-disqualifying occupations as permitted by the Plan. Specifically, unlike the present case, the plan defined "retirement" to require the employee's complete severance from employment in the covered industry but exempted employment in occupations, like the instant case, that were not covered by the collective bargaining agreement. *Meakin*, 2018 WL 405009, at *2. However, like Defendants in this case, in approximately 2011, the plan discovered that by approving early retirement pensions where eligibility was based on the Rule of 85 and where the employee nevertheless continued employment in the industry covered by the plan, the plan was in violation of § 401(a). In *Meakin,* as in the instant case, the plan thereafter filed a VCP with the I.R.S. disclosing the circumstances of this violation based on the plan's erroneous interpretation of § 401(a)'s requirements that early retirees cease any further employment with employers in their industry which resulted in improper pension distributions to 290 retirees including plaintiff since 1990. The I.R.S. subsequently accepted the defendant's VCP which proposed suspension of early retirement pensions for 58 of the retired employees received after 2007 including plaintiff's whose pension was suspended in 2014. In rejecting plaintiff's action brought pursuant to 28 U.S.C. § 1132(a)(1)(B) for benefit denial (plaintiff did not assert a claim pursuant to § 204(g)), the court found defendants did not engage in an abuse of discretion in their reinterpretation

of the plan, as governed by § 401(a), that early retirement must include a severance of any further employment including in a non-disqualifying occupation as had been allowed under the plan. *Meakin*, 2018 WL 405009, at \*\*5-6. In support of its conclusion, the court noted defendant trustees had a duty as fiduciaries to interpret and act to ensure the plan complied with the Internal Revenue Code to protect the plan's continued tax-exemption under § 401(a). *Id.* Notably, the court in *Meakin* also cited the PLR, relied upon by Defendants in this case, as evidence that the defendant's determination that by allowing payment of early pension benefits to employees who had continued to work in their industry, albeit in non-disqualified occupations, defendants' prior administration of the plan was in violation of applicable tax law, was reasonable. *Meakin*, 2018 WL 405009, at \*6. Specifically, the court held that defendants were required to interpret the plan in a manner compliant with applicable law, specifically § 401(a) and related I.R.S. regulations, so as to preserve the economic viability of the plan for future beneficiaries rather than continue to pay illegal benefits to a few beneficiaries including plaintiff thereby jeopardizing the tax-exempt status of the plan, and that such belated corrective action was therefore reasonable providing no basis for a claim under § 1132(a)(1)(B) seeking to recover wrongfully denied benefits.

Similarly, in *Maltese v. National Roofing Industry Pension Plan,* 2016 WL 7191798, at \*1 (N.D.W.Va Dec. 12, 2016) plaintiff applied for and received early retirement benefits after defendant's approval on May 1, 2012, at which time plaintiff commenced work as an estimator for his former employer. Subsequently, defendant, in 2015, suspended plaintiff's pension because by engaging in continued employment plaintiff had not retired and that plaintiff's receipt of early pension payments was in violation of § 401(a) requiring defendant to take corrective action by suspending

plaintiff's pension payments in order to bring the plan into compliance with § 401(a) thereby preserving the plan's tax-exempt status. *Maltese*, 2016 WL 7191798, at *4. The court therefore granted summary judgment to defendant on plaintiff's ERISA claim[11] alleging a wrongful denial of benefits based on its finding that defendant's interpretation of the plan which had excluded plaintiff's continued employment from the plan's exemption from a suspension of early pension benefits for work by "a Pensioner" was "reasonable and consistent with the goal of maintaining the Plan's tax-exempt status under § 401(a)." *Id.* In reaching its conclusion, the court in *Maltese* also relied, despite its non-binding effect, upon the PLR in this case which, as discussed, Discussion, *supra*, at 34, concluded that no valid retirement for § 401(a) purposes occurs where an employee otherwise eligible for early retirement benefits after receiving approval of an application for such benefits "will immediately return to service with the employer." *Id.* Thus, both *Meakin* and *Maltese* support the court's conclusion in this case that the tax implications of Defendants' prior interpretation of the Plan, particularly Art V. Sec. 1(d) regarding Plaintiffs' eligibility under the Plan for Special Early Retirement pensions, strongly support the reasonableness of such interpretation and, as such, in this case, that Defendants' corrective action through Defendants' later interpretation as stated in Defendants' 2011 Determination and suspension of Plaintiffs' benefits in order to preserve the tax-exempt status of the Fund was not arbitrary or capricious.

Plaintiffs' assertion that by adopting the 2012 Amendments to the Plan to include Defendants' later reinterpretation demonstrates Defendants' 2011 Determination is not an "interpretation of the terms of the Plan," Dkt. 118-1 at 4 n. 1, in that "*Defendants*

---

[11] The court's decision does not specify the basis of plaintiff's ERISA claim.

*actually changed them*" is incorrect.  As the relevant terms "to retire" and "retirement"

had no previous definition in the Plan, Defendants' action in both Defendants' 2011

Determination and the February 2012 Amendments to conform Defendants' prior

interpretation and practice to the requirements of § 401(a) effected no change in any

previously existing term of the Plan under which Plaintiffs had sought to retire.

Accordingly, Defendants' actions as challenged by Plaintiffs did not constitute a *de facto*

amendment of the Plan subject to § 204(g).

Defendants contend that by requiring Plaintiffs terminate all employment to

qualify for a Special Early Retirement pension Defendants did not impose a new Plan

condition.  *See* Dkt. 116 at 11 (citing to Plan Art. V Sec. 2(c) which states that benefits

shall commence no later than the 60th day after the "Employee terminates service with

all of the participating Employers.").  However, as Plaintiffs point out, Dkt. 118-1 at 12,

this section is directed to protecting an employee's right to eventually receive benefits to

which the employee is entitled under a plan and replicates the requirements stated in

ERISA, 29 U.S.C. § 1056(a)(1)-(3) ("§ 1056(a)(1)-(3)"), that unless an employee elects

otherwise <u>benefits</u> <u>shall</u> <u>not</u> <u>begin</u> <u>later</u> <u>than</u> the sixtieth (60th) day after the "last of the

following occurs:

(a)    The Employee attains Normal Retirement Date;

(b)    The occurrence of the tenth (10th) anniversary of the Plan Year in which

the employee commenced participation in the Plan;

<u>or</u>

(c)    The Employee terminates service with all of the participating Employers.

Thus, this provision cannot be fairly read to require an employee who otherwise was

eligible for a Special Early Retirement to also terminate all further employment with

participating employers.  Section 1056(a)(1)-(3) simply "protects a participant's right to receive benefits by establishing . . . the latest possible trigger for payment" under a plan. *Morales v. Plaxall, Inc.*, 541 F.Supp 1387, 1390 (E.D.N.Y. 1982).  Indeed, nothing in the record remotely suggests that such was ever Defendants' understanding of this provision, and, significantly, Plan Art. V Sec. 1(d), Dkt. 99-2 at 19-20, which defines eligibility for a Special Early Retirement pension makes no reference to it.  Accordingly, Art. V Sec. 2(c) does not, contrary to Defendants' assertion, establish that Plaintiffs were always required by the terms of the Plan to terminate all employment to receive a Special Early Retirement pension without Defendants' reliance on a more correct application of the requirement of § 401(a) that an early retirement, one prior to age 65, except for plans subject to § 401(a)(36) allowing for early retirement at age 62 with continued service, retirement requires a complete severance of an employee's further employment with a participating employer.  *See Smith v. United States,* 508 U.S. 223, 233 (1993) ("[j]ust as a single word cannot be read in isolation, nor can a single provision of a statute [or plan].")

Plaintiffs contend that Defendants' rationale for Defendants' reinterpretation is based on an error by Defendants on a question of law, *i.e.*, Defendants' understanding of the requirements of § 401(a), and therefore is to be reviewed *de novo* and not under the deferential arbitrary and capricious standard applicable to discretionary determinations by ERISA plan fiduciaries.  Dkt. 118-1 at 3-7 (citing caselaw and referencing Defendants' characterization of Defendants' approval of Plaintiffs' Special Early Retirement pensions where Defendants were aware of Plaintiffs' intent to nevertheless continue employment in non-Disqualifying Employment as "contrary to the law," Dkt. 118-1 at 4, and that Defendants' approvals were based on a "mistake of law"

(referencing Defendants' VCP application, Dkt. 101-6 at 21)).  *See Montesano v. Xerox Corp. Retirement Income Guarantee Plan*, 117 F.Supp.2d 147, 158 (D.Conn. 2000) (where plan "administrator's decision turned on a legal interpretation [of a statute or regulation] . . . *de novo* review required) (citing caselaw), *aff'd in relevant part*, 256 F.3d 86 (2d Cir. 2001).  However, other than asserting Defendants' reliance on the PLR was not permitted under 26 U.S.C. § 6710(k)(3), and attempting to distinguish Rev. Rulings 71-437 and 74-255, Dkt. 118-1 at 17 n. 14, as not involving an issue of retirement, Plaintiffs also rely on ERISA-based regulations which are not controlling on whether under § 401(a) Plaintiffs' pensions were improperly approved.  Plaintiffs cite no caselaw indicating otherwise and the court's research reveals no such contrary authority. Further, Plaintiffs point to no judicial decisions which plausibly support that Defendants' rationale for Defendants' 2011 Determination and subsequent corrective actions as detailed in the VCP were legally erroneous and thus unnecessary because Defendants' approvals of Plaintiffs' pensions were, contrary to Defendants' stated failures in the VCP as approved by the I.R.S., compliant with § 401(a) and thus not based on a "mistake of law" or other actions prohibited by § 401(a) as Defendants contend. Because neither I.R.S. revenue rulings nor private letter rulings are regulations promulgated after public notice and comment, and sometimes are self-serving when issued by the I.R.S. in preparation to litigate so as to bolster its position in the ensuing litigation, such pronouncements are not entitled to *Chevron*[12] deference by the courts but, rather, are "'entitled to respect' only to the extent it has 'the power to persuade,'" *Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 287 (2d Cir. 2015) (quoting *Christensen v.*

---

[12]   *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984).

*Harris Cty.*, 529 U.S. 576, 587 (2000)), and provided such interpretation is not

"inconsistent with the statute's plain meaning. . . ." *Id.* (citing *Gen. Dynamics Land Sys.*

*v. Cline*, 540 U.S. 581, 600 (2004) ("[D]eference to [an agency's] statutory interpretation

is called for only when the devices of judicial construction have been tried and found to

yield no clear sense of congressional intent.")). *See also Taproot Administrative*

*Services, Inc. v. Comm'r*, 133 T.C. 202, 209, n. 16 (2009) (noting various types of I.R.S.

pronouncements are entitled to differing levels of deference, but that *Skidmore*[13]

deference, the lowest level, has continued viability and applies to I.R.S.

pronouncements other than regulations). Given that the purpose of § 401(a) is to

assure that tax-exempt pension trusts shall function for the sole purpose of providing

retirement income and not for other financial purposes such as income enhancements

and estate creation, *see* Discussion, *supra*, at 34 (quoting Pamela D. Perdue, Esq., *The*

*Ins and Outs of Retirement Plan Distributions,* TAXES – THE TAX MAGAZINE, Feb. 2009

at 63) the relevant I.R.S. regulations, rulings and the PLR requiring an early retirement

applicant to forgo continued employment with a participating employer cannot be said to

be inconsistent with § 401(a) and Plaintiffs offer no reason to find otherwise.

Significantly, other decisions which have addressed this issue, *Meakin* and *Maltese*,

have also concluded the I.R.S.'s regulations, rulings as well as the PLR represent a

legally correct analysis of the question. The court therefore finds such regulations,

rulings and the PLR are entitled to persuasive effect and that Defendants committed no

legal error in seeking to conform Plaintiffs' pensions to § 401(a)'s requirements. *See*

*Maltese*, 2016 WL7191798, at *4 ("while non-binding, the I.R.S.'s analysis and

---

[13]  *Skidmore v. Swift*, 323 U.S. 134, 140 (1944).

interpretation of § 401(a) [in the PLR] and its relevant regulations is persuasive"). Thus,

even under the *de novo* standard of review Plaintiffs fail to demonstrate Defendants

committed an error of law and wrongfully suspended Plaintiffs' pensions and

conditioned any restoration of Plaintiffs' pension payments upon Plaintiffs' termination of

their employment as did Plaintiffs Puglia and Noble (Plaintiff O'Callaghan initially

continued with his employment but later stopped working and had his pension payments

restored).

3.    <u>Plaintiffs' Special Early Retirement Pensions Were Not An Accrued
Benefit Under The Plan</u>.

For purposes of a claim pursuant to § 204(g) whether an early retirement

beneficiary suffered a reduction in an "accrued benefit" is "determined under the Plan."

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004) (quoting 29 U.S.C.

§ 1002(23)(A)). Here, Art. I Sec. 1 of the Plan defines "Accrued Benefit" as the monthly

benefit payable at Normal Retirement Date that the Employee has earned under Article

V . . .." As noted, Facts, Discussion, *supra*, at 6, Article V of the Plan grants the Special

Early Retirement pensions to employees like Plaintiffs who reach age 55 with 30 years

of credited service in the same monthly amount as a retiree at age 65 would receive

under the Plan. Article V of the Plan grants the Special Early Retirement pension to

"[a]ny employee who <u>retires</u>." Dkt. 99-2 at 19. In this case, as discussed, Discussion,

*supra*, at 24-45, because Plaintiffs continued to be employed by their former respective

employers, when Plaintiffs applied for their pensions between 2001-2009, Plaintiffs did

not "retire" under any definition of that term in the Plan as required by § 401(a), and

Defendants reasonably determined that Defendants' approval of Plaintiffs' pensions was

erroneous requiring Defendants suspend Plaintiffs' pensions in order to bring the Plan

into compliance with § 401(a) unless Plaintiffs ceased further employment with their employers before reaching age 65. Thus, as Plaintiffs' Special Early Retirement pensions were improperly approved by Defendants in violation of § 401(a), such pensions did not constitute a benefit that had accrued to Plaintiffs when Plaintiffs' pensions were approved by Defendants. An ERISA plan benefit resulting from an administrator's misconstruction of the plan does not accrue to support a claim pursuant to § 204(g). *See Sims v. American Postal Workers Acc. Ben. Association*, 2013 WL 4677723, at *6 (D.N.H. Aug. 30, 2013) (mistake by an administrator's prior construction of plan to allow use of employee's "annualized" versus employee's last year's actual annual compensation to determine plaintiff's three highest years of compensation for purposes of calculating plaintiff's pension did not result in accrual of a pension benefit under § 204(g) where plan had not been properly amended to authorize such "annualized" final year compensation and existing plan language was inconsistent with such annualized calculation), *aff'd,* No. 13-2246 (1st Cir. Aug. 6, 2014) (unpublished). *See also Wetzler v. Ill. CPA Soc. & Foundation Retirement Income Plan*, 586 F.3d 1053, 1058 (7th Cir. 2009) (where plan amendment eliminated lump sum distribution as optional form of pension benefit and administrator reasonably determined such option would violate § 401(a) resulting in potential loss of plan's tax-exempt status, preexisting option lump sum payment to plaintiff did not constitute an accrued benefit for purposes of § 204(g)); *Hunter v. Caliber Systems, Inc.*, 220 F.3d 702, 713-14 (6th Cir. 2000) (where plan reasonably determines plaintiffs not entitled to lump sum distribution as a pension benefit would violate applicable I.R.S. regulations plan did not reduce an accrued benefit actionable under § 204(g)). As explained, Discussion, *supra*, at 29, as fiduciaries, Defendants were authorized to reconsider a prior award of benefits as

improperly approved (citing *Serbanic*, 325 Fed.Appx. at 91; *Oster*, 869 F.2d at 1219). Accordingly, because Plaintiffs' Special Early Retirement pensions were improperly approved, based on Defendants' misunderstanding of § 401(a)'s requirement no such benefit accrued to Plaintiffs and Plaintiffs did not suffer a reduction of "an accrued benefit" by virtue of Defendants' suspension of Plaintiffs' pension or termination of Plaintiffs' continued employment within the scope of protection under § 204(g). Defendants' motion for summary judgment (Dkt. 98) should therefore be GRANTED on this ground; Plaintiffs' motion (Dkt. 101) should be DENIED.

B.  Plaintiffs' Second Claim.

Plaintiffs' Second Claim alleges, pursuant to ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), a denial of benefits under an ERISA plan, specifically Defendants wrongful refusal to continue Plaintiffs' Special Early Retirement pensions following Defendants' 2011 Determination to suspend such benefits in order to bring the Plan into compliance with § 401(a) and avoid a likely loss of the Fund's tax-exempt status. ERISA § 502(a)(1)(B) authorizes a civil action by a plan participant or beneficiary to "recover benefits due him under the terms of his plan . . .." 29 U.S.C. § 1132(a)(1)(B). "To prevail under § 502(a)(1)(B), a plaintiff must show that: (1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was <u>wrongfully</u> denied a benefit owed under the plan." *Guerrero v. FJC Security Services Inc.*, 423 Fed.Appx. 14, 16 (2d Cir. 2011) (citing *Giordano v. Thomson,* 564 F.3d 163, 168 (2d Cir. 2009)). Under a plan, as in this case, which grants to its fiduciaries discretionary decision-making authority with respect to questions of interpretation which lead to an alleged denial of benefits such denials are reviewable for abuse of discretion or more specifically whether the challenged decision was arbitrary and capricious.

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 114-15 (1989). A plan administrator's decision is arbitrary and capricious or contrary to law "only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan*, 52 F.3d at 442 (quoting *Abnathya*, 2 F.3d at 45) (*abrogated on other grds*, *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

Here, the parties do not dispute the Plan is one covered under ERISA nor that Plaintiffs were, prior to their putative retirements at issue, participants, and since their pensions were approved are also beneficiaries of the Plan. Thus, for purposes of Plaintiffs' and Defendants' motions for summary judgment whether Defendants wrongfully denied Plaintiffs' pension benefits turns on whether the record demonstrates Defendants' determination to suspend Plaintiffs' pension benefits was based on an unreasonable, *i.e.*, an arbitrary and capricious interpretation of the requirements of the Plan for approval of Plaintiffs' pensions, or one contrary to law, in the context of the Defendants' legal and fiduciary obligation to administer the Plan in accordance with the terms of the Trust, the Plan and applicable law. As discussed, Discussion, *supra*, at 24-45, far from one fairly characterized as unreasonable, Defendants' reinterpretation of the Plan in 2011 to require Plaintiffs' to completely terminate further employment as a legally required precondition to continued eligibility for Plaintiffs' early retirement pension benefits in order to comply with the requirement of § 401(a) as construed by the I.R.S., and in order to preserve the Fund's tax-exempt status, was a corrective interpretation entirely reasonable under the undisputed facts and applicable law and not inconsistent with any terms of the Plan at that time. Also, as discussed, a plan trustee's action in distributing a benefit which violates applicable law is subject to reconsideration and rectification as erroneous. Discussion, *supra*, at 29. Accordingly, Defendants'

suspension of Plaintiffs' pensions or requiring Plaintiffs forgo continued employment

with Plaintiffs' former employers was not arbitrary, capricious or illegal. To the contrary,

it was on based on a reasonable interpretation of applicable Treasury regulations, I.R.S.

rulings and the PLR required to preserve the Fund's tax-exemption. Plaintiffs' Second

Claim is therefore without merit and Defendants' motion (Dkt. 98) directed to Plaintiffs'

Second Claim should be GRANTED; Plaintiffs' motion (Dkt. 101) should be DENIED.

C.      Plaintiffs' Third Claim.

Plaintiffs' Third claim alleges Defendants are liable to Plaintiffs for the value of

Plaintiffs lost pension benefits, income from lost employment with Plaintiffs' former

employers and related medical benefits as a result of Defendants' breach of fiduciary

duty owed Plaintiffs in violation of ERISA § 404(a)(1); 29 U.S.C. § 1104(a)(1) ("§

1104(a)(1)"). Such violations are actionable pursuant to ERISA § 502(a)(3); 29 U.S.C. §

1132(a)(3) ("§ 1132(a)(3)"). As relevant, Section 1104(a)(1) requires a fiduciary to act in

the interest of participants and beneficiaries for the exclusive purpose of providing

benefits to participants and their beneficiaries, and defraying expenses of plan

administration, with "the care, skill, prudence, and diligence under the circumstances

then prevailing that a prudent" person "would use in the conduct of an enterprise of a

like character and with like aims . . .." In order to state a claim for breach of fiduciary

duty under ERISA, plaintiff must show "(1) defendant was performing a fiduciary

function when it engaged in the conduct at issue in the complaint; (2) the defendant

breached a fiduciary duty; and (3) the plaintiff is entitled to equitable relief." *In re*

*DeRogatis*, 904 F.3d 174, 190 (2d Cir. 2018). Here, the parties do not dispute

Defendants were fiduciaries of the Plan when Defendants suspended Plaintiffs' pension

benefits or required Plaintiffs terminate their respective employment. However, as

discussed, Discussion, *supra*, at 24-45, because Plaintiffs did not retire in accordance with the requirements of § 401(a) when Plaintiffs' Special Early Retirement pensions were approved by Defendants such that Plaintiffs' pensions were approved in violation of § 401(a), Defendants did not breach any fiduciary duty with respect to the award of any pension benefit under the Plan.  As discussed, Discussion, *supra*, at 24-45, in suspending Plaintiffs' pensions, Defendants acted reasonably to correct Defendants' erroneous approval of Plaintiffs' pensions in order to retain the tax-exempt status of the Fund, a specific fiduciary duty imposed by the terms of the Trust itself, and necessary to provide for its future economic viability in order to benefit all present and future retirees as beneficiaries under the Plan who receive pensions from the Fund.  *See* Dkt. 99 ¶ 34 (continued employment by Plaintiffs following early retirement pension approvals "contrary to law" and "threaten the continued existence of the Pension Plan") (Affidavit of Debra Korpolinski, Plan Administrator, quoting from Defendants' November 29, 2011 letter to Plaintiffs).  It therefore would have been unreasonable for Defendants as fiduciaries to act other than in compliance with their obligation under the Trust and applicable tax law as interpreted by the I.R.S. to assure such tax-exempt status where the failure to do so would thereby jeopardize the future viability of the Fund to the economic detriment of all beneficiaries.  As such, Defendants acted in a reasonably prudent manner as would a prudent person in administering the Fund under the same circumstances in accordance with § 1104(a)(i) in the best interests of the Plan's beneficiaries and, on this record, as a matter of law, there was no breach by Defendants of any fiduciary duty to Plaintiffs imposed by ERISA.

Defendants argue alternatively that Plaintiffs' Third Claim is also subject to dismissal as duplicative.  Dkt. 100 at 19 n. 16 (citing *Del Greco v. CVS Corp.*, 337

F.Supp.2d 475, 486-88 (S.D.N.Y. 2004). In *Del Greco* the court held that a claim

pursuant to § 1132(a)(3) should proceed only if equitable relief, as Plaintiffs have

requested in this case, is sought. *Del Greco*, 337 F.Supp.2d at 487 ("Thus, Plaintiff may

bring a claim under both 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) only as

long as she seeks equitable relief on her 29 U.S.C. § 1132(a)(3) claim.") (citing *Devlin v.*

*Empire Blue Cross and Blue Shield*, 274 F.3d 76, 89-90 (2d Cir. 2001)). Although in *Del*

*Greco* plaintiff's claims for breach of fiduciary duty was permitted to proceed the court

later found that the relief sought by plaintiff for that claim was the same as requested on

plaintiff's denial of benefits claim, plaintiff's claim pursuant to § 1132(a)(3) was deemed

redundant and dismissed. *Id.* at 488-89. Here, the relief Plaintiffs seek under Plaintiffs'

Third Claim is the same as requested under Plaintiffs' First and Third Claims and, as

such, should, alternatively, also be dismissed based on redundancy. Accordingly,

Defendants' motion (Dkt. 98) directed to Plaintiffs' Third Claim should be GRANTED;

Plaintiffs' motion (Dkt. 101) directed to this claim should be DENIED.

      D.    <u>Defendants' Counterclaim for Recoupment</u>.

      In Plaintiffs' cross-motion for summary judgment (Dkt. 101 at 27-28), Plaintiffs

request that Defendants' counterclaims, Dkt. 30, seeking recoupment of the

approximately $1.9 million erroneously paid to Plaintiffs from 2002 to the current date as

improperly approved Special Early Retirement pensions be withdrawn for failure to

designate a fund exclusively holding such payments in order to support equitable relief

available under ERISA as required by *Great-West Life & Annuity Ins. Co. v. Knudson*,

534 U.S. 204, 213-14 (2002) (fiduciary's claim for restitution of medical treatment

payments from proceeds of settlement of beneficiary's tort action not then in actual

possession of beneficiary was legal remedy not available pursuant to § 1132(a)(3)

which provides for equitable relief directed to an identifiable fund under beneficiary's control only).  In Defendants' Answer, Defendants, pursuant to ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3) and (e)), asserted counterclaims against each Plaintiff to recover the amounts of Special Early Retirement pensions erroneously paid to each Plaintiff as of February 1, 2012 ("the Counterclaims").  *See, e.g.*, Dkt. 30 at 9-11 (Plaintiff Metzgar). In Plaintiffs' Reply (Dkt. 57), Plaintiffs deny Defendants' assertions that Plaintiffs were ineligible for Special Early Retirement pensions under the terms of the Plan and that the pension payments received by each Plaintiff were in violation of the Plan permitting Defendants to seek recovery of the pension payments paid to each Plaintiff.  *See, e.g.,* Dkt. 57, ¶¶ 16, 18 (Plaintiff Metzgar).  Plaintiffs also contend the Counterclaims are outside both a three-year and six-year statute of limitation period.  *Id.* at 17-18. Alternatively, Plaintiffs asserted a (six-year) statute of limitation defense for Plaintiffs Mueller, Noble, K. Reagan, and R. Reagan.  In Defendants' Memorandum of Law In Further Support of Defendants' Motion For Summary Judgment And In Opposition To Plaintiffs' Motion For Summary Judgment, filed March 5, 2018 (Dkt. 116), Defendants request permission to withdraw the Counterclaims for the reason, consistent with Plaintiffs' primary defense, that Defendants have been unable to establish the existence of the pension funds paid to Plaintiffs to support enforcement of the equitable lien or constructive trust Defendants seek to impose upon such funds as required by *Montanile v. Bd. of Trustees of the Nat'l Elevator Health Benefit Plan*, ___ U.S. ___, 136 S.Ct. 651, 659-60 (2016) (fiduciary's action pursuant to § 1132(a)(3) for equitable relief must be directed to an identifiable fund held by pension plan beneficiary who had agreed plan was entitled to restitution of value of medical treatment benefits received from plaintiff

benefit plan).[14]  Plaintiffs have not responded to Defendants' request for dismissal of the Defendants' Counterclaims.  *See* Dkt. 121 (Plaintiffs' Reply Memorandum of Law in Support of Motion for Summary Judgment) (*passim*)).

Fed.R.Civ.P. 41 ("Rule 41__"), which applies to counterclaims as well as a plaintiff's claim, *see* Rule 41(c), provides for voluntary dismissal of a counterclaim where, as here, plaintiff has filed a reply as a responsive pleading either by (1) a stipulation of dismissal signed by all parties pursuant to Rule 41(a)(1)(ii), or (2) pursuant to Rule 41(a)(2) by court order upon "such terms that the court considers proper." Because Plaintiffs have served a reply, a voluntary dismissal by Defendants of the Counterclaims is not available pursuant to Rule 41(d) ("A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) <u>must</u> be made: (1) <u>before</u> a responsive pleading is served . . .. Accordingly, in the absence, to date, of a stipulation filed pursuant to Rule 41(a)(1)(ii) and, in the absence of any opposition by Plaintiffs to Defendants' request, the court finds Defendants' concession that Defendants are unable to establish the existence of a fund to which Defendants' equitable relief request can attach, and request to withdraw the Counterclaims, should be considered under Rule 41(a)(2) and, as such, because Defendants do not request such dismissal should be without prejudice, Defendants' motion to dismiss the Counterclaims should be GRANTED with prejudice.

---

[14]  Defendants' request, which requires an order of the court, should have been made by motion in accordance with Fed.R.Civ.P. 7(b)(1).  Accordingly, for purposes of this Report and Recommendation, the court treats Defendants' request as a motion to dismiss the Counterclaims pursuant to Rule 41(a)(2) as a dispositive motion.

II.    Plaintiffs' Motion For Leave to File Supplemental Complaint.

By papers filed February 1, 2018, Plaintiffs moved for leave to file a supplemental complaint pursuant to Fed.R.Civ.P. 15(d) ("Rule 15(d)") (Dkt. 110) and attaching such Proposed First Supplemental Complaint (Dkt. 110-2).  In the Proposed Supplemental Complaint, Plaintiffs seeks to allege "new facts [which] supplement and provide additional particularization for each cause of action in the original Complaint."  Dkt. 110-2 ¶ 20.  Specifically, Plaintiffs seek to add allegations that Defendants amended the Plan in August 2016 ("the August 2016 Amendment") to authorize Defendants to recover the asserted overpayments Defendants made to Plaintiffs as Special Early Retirement pensions erroneously approved by Defendants in specified amounts paid to each Plaintiff with 12% interest.  Dkt. 110-2 ¶¶ 23-24(a)-(g).  Plaintiffs also propose to allege that in exercising the newly enacted authority granted to Defendants by the August 2016 Amendment to seek recovery of the overpayments, Defendants withheld the entire January 2017 pension payment due Plaintiffs Mueller, Noble, O'Callaghan, Puglia, K. Reagan and R. Reagan, and have further reduced each Plaintiff's monthly pension payment thereafter by 25%.  Plaintiffs propose to further allege that as to Plaintiff Metzgar, who has not discontinued his non-Disqualifying Employment under the Plan and had not reached age 65,[15] Defendants have refused to pay Metzgar any pension payments Plaintiffs claim are due him since January 2012 when he refused to terminate his employment with Danforth in compliance with Defendants' demand.  Dkt. 110-2 ¶ 25.

---

[15]   Metzgar will turn 65 on April 10, 2019 (Dkt. 105 ¶ 8).

Plaintiffs also propose new allegations describing that a substantial number of other retirees under the Plan who, like Plaintiffs, continued working with participating employers in non-Disqualifying Employment following approval of their Special Early Retirement pensions by Defendants and thus, according to Defendants, also owe Defendants large sums for improperly approved pensions to such early retirees, were offered settlements of Defendants' threatened claims, like those asserted by Defendants against Plaintiffs, against such other early retirees, but not Plaintiffs, for "pennies on the dollar" which were accepted and paid by these other retirees with the result that these retirees' alleged overpayments were in effect reduced to approximately 5% of the face amount of Defendants' respective claims for the pension overpayments. Dkt. 110-2 ¶¶ 26-29. Additionally, according to Plaintiffs' proposed supplemental complaint, Defendants refused to settle, on the same terms as described above, with Plaintiffs R. Regan, Puglia, K. Reagan and Noble, who were not interested in such a favorable settlement, unless Plaintiffs Metzgar, Mueller and O'Callaghan, who apparently refused to settle on these terms, also settled with Defendants. Dkt. 110-2 ¶ 30-31. Plaintiffs further state that in the absence of a settlement with Plaintiffs as described above, Defendants issued a 2017 denial of Plaintiffs' administrative appeal of Defendants' self-help initiative upholding Defendants' original 2011 Determination and continued to pay Plaintiffs reduced pensions as described. Dkt. 110-2 ¶ 32. Additionally, Plaintiffs assert a claim pursuant to 29 U.S.C. § 1132(a)(1)(B) for wrongful denial of pension benefits based on the fact that when Plaintiffs retired the Plan did not include the August 2016 Amendment authorizing Defendants to recover the alleged pension overpayments by the set-offs against Plaintiffs' pension payment commencing in January 2017, a form of self-help prohibited by ERISA. Dkt. 110-2 ¶¶ 40-43.

Plaintiffs contend that Plaintiffs' motion should be granted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to Defendants as the party to be served, or futility.  Dkt. 110-1 at 6 (citing caselaw).  Plaintiffs further assert that Plaintiffs could not earlier seek the Proposed Supplemental Complaint as an Amended Complaint addressing Defendants' December 2016 determination to initiate set-off for repayment of Defendants' restitution or recoupment claims as Defendants' recovery actions occurred after the cut-off of November 4, 2016 for motions to file amended pleadings established by the Scheduling Order (Dkt. 56) and Plaintiffs were required to exhaust administrative remedies by appealing Defendants' determination to obtain repayment which Defendants eventually denied in May 2017.  Dkt. 110-1 ¶¶ 26-27.  Plaintiffs therefore request permission to supplement the Complaint by asserting additional claims pursuant to § 204(g) based on Plaintiffs' assertion that Defendants attempt to recover the pension overpayments by set-off is a Plan amendment in violation of the anti-cutback rule, and Defendants' refusal to pay Plaintiffs the full amount of Plaintiffs' Special Early Retirement pensions due all Plaintiffs since January 2017 (except Metzgar who does not at present receive a pension payment) is a denial of benefits in violation of § 1132(a)(1)(B) and § 1132(a)(3).  Dkt. 110-2 ¶¶ 36-48.  In the Proposed Supplemental Complaint Plaintiffs also request a permanent injunction based on these newly stated facts, Dkt. 110-2 ¶ 44-48, and a preliminary injunction, ¶¶ 49-54, based on an irreparable loss of enjoyment of Plaintiffs' retirement years given Plaintiffs' advancing ages and the expected time necessary to complete this litigation.  Dkt. 110-2 ¶¶ 49-54. Defendants oppose Plaintiffs' motion (Dkt. 114) (Defendants' Memorandum of Law in Opposition to Plaintiffs Motion for Leave to File a Supplemental Complaint filed March 5, 2018) asserting Plaintiffs' undue delay in requesting permission to file the Proposed

Supplemental Complaint and futility based on a short contractual 180-day limitation period as established by the Plan.  Plaintiffs' Reply Memorandum of Law (Dkt. 122-1) was filed March 19, 2018.

In general, Fed.R.Civ.P. 15(d) ("Rule 15(d)") permits the court to allow a supplemental complaint to add "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Supplemental pleadings are typically permitted absent undue delay, bad faith, dilatory tactics, undue prejudice or futility.  *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).  Plaintiffs assert, *see* Discussion*, supra*, at 57, their request for the Proposed Supplemental Complaint is not based on any undue delay by Plaintiffs.  In support, Plaintiffs also point to the court's "suggestion" that Defendants' set-off actions could be the subject of a Supplemental Complaint as stated in the court's Decision and Order (Dkt. 13), filed August 29, 2017, ("the D&O") denying Plaintiffs' request to consolidate a new complaint (17-CV-726V(F) ("*Metzgar II*")) filed on August 1, 2017 by Plaintiffs against Defendants and former trustees of the Fund asserting anti-cutback, denial of benefits, breach of fiduciary duty and discrimination claims in violation of ERISA Sections 204(g), 502(a)(1)(B), 502(a)(3), 510 and 409(a).  In *Metzgar* II, Plaintiffs also requested declaratory and injunctive relief. In *Metzgar* II, Plaintiffs asserted these new claims were based on Defendants' August 2016 Amendment to the Plan authorizing Defendants to seek restitution or engage in other recovery actions such as the set-off challenged by Plaintiffs of the Special Early Retirement pensions Plaintiffs had been erroneously paid to Plaintiffs by Defendants in violation of Section 401(a) of the Internal Revenue Code and Defendants' December 2016 determination reducing Plaintiffs' future pension payments by 25% to recoup such overpayments.  In the D&O, the court determined that consolidation of *Metzgar* I, the

instant action, and *Metzgar* II, would delay resolution of the controlling threshold questions, *viz.*, whether Defendants' 2011 Determination to suspend Plaintiffs' early retirement pensions violated ERISA § 204(g) or § 502(a)(3). Thus, Plaintiffs' proposed Supplemental Complaint which seeks to include the same claims asserted in *Metzgar* II would, if allowed, effectively nullify the determination of the D&O that litigating such claims at the present time in conjunction with *Metzgar* I could unduly delay resolution of this key threshold issue.

It is correct, as Plaintiffs point out, Dkt. 110-1 ¶ 29, that the court, in the D&O did observe that Plaintiffs could seek to include the facts relating to Defendants' August 2016 plan amendment and Defendants' subsequent decision in December 2016 to recover by set-off, beginning in January 2017, the overpayment of Plaintiffs' early pension benefits from pension payments to which Plaintiffs (except as to Metzgar) were then entitled having reached age 65, but, contrary to Plaintiffs' contention, the court's "suggestion," Dkt. 110-1 ¶ 29; Dkt. 122-1 at 13, was limited to Plaintiffs' request for injunctive relief in *Metzgar I*. As the D&O stated in this regard "Plaintiffs may, if Plaintiffs deem it necessary, also request permission to add the Defendants' December 2016 set-off decision to the Complaint in *Metzgar* I pursuant to Fed.R.Civ.P. 15(d), as a supplemental pleading regarding such decision and its adverse effect on Plaintiffs <u>as additional particularization to support Plaintiffs' injunctive request</u>." Decision and Order, Dkt. 13 at 11.

In reliance on the court's observation Plaintiffs, in the proposed Supplemental Complaint, sought to add allegations regarding Defendants' August 2016 Plan amendment authorizing Defendants to obtain restitution of Defendants' pension overpayments to Plaintiffs and the December 2016 implementation of substantial (100%

of Plaintiffs' January 2017 pension payment and 25% of each following payment) set-offs as a form of self-help in accordance with the 2016 Plan Amendment authorization to do so which Plaintiffs assert constitute additional violations of § 204(g) and § 502(a)(3). In support of Plaintiffs' motion for leave to file the Proposed Supplemental Complaint, Plaintiffs assert the court's "suggestion" induced Plaintiffs to "file a supplemental complaint for additional particularization of their claims . . .." Dkt. 122-1 at 8. However, as a fair reading of the actual text of the relevant portion of the D&O demonstrates, the court's comment was limited to Plaintiffs' providing additional support for Plaintiffs' probable request for preliminary injunctive relief in *Metzgar* I by explaining the additional economic harm incurred by Plaintiffs stemming from the underlying Defendant's 2011 Determination that Plaintiffs' Special Early Retirement pensions were erroneously approved and needed to be suspended as additional evidence that a balance of hardships, *see* D&O at 10-11, favored Plaintiffs. Plaintiffs acknowledge "[Defendants'] recoupment action [counterclaims] is based entirely on the same facts as the 2011 Determination." Dkt. 122-1 at 10. Accordingly, allowing the Proposed Supplemental Complaint to proceed at this point in the case would circumvent the court's denial of consolidation of *Metzgar* I and *Metzgar* II and is predicated on Plaintiffs' misreading of the intent of the court's observation. Additionally, as the undersigned has recommended Defendants' summary judgment motion on the merits of the threshold issue in this case be granted, Discussion, *supra*, at 24-45, and, that Plaintiffs' motion for preliminary injunctive be denied, *see* Discussion, *infra*, at 61-65, for lack of a showing of irreparable harm, a prerequisite to such relief, any use of Plaintiffs' proposed supplemental allegations to support Plaintiffs' request for injunctive relief is moot. As Defendants have requested dismissal of the Counterclaims, which the court also

recommends be granted, the need for any supplemental pleading of facts relating to such Counterclaims in *Metzgar* I has been substantially diminished if not eliminated. Further, all of Plaintiffs' claims in *Metzgar* II attacking Defendants' set-offs remain unaffected and regardless of the disposition of the motions for summary judgment directed to Plaintiffs' claims in the instant action, Plaintiffs may, upon vacating the stay of *Metzgar* II yet proceed based on the allegations in *Metzgar* II and the Proposed Supplemental Complaint, including that the August 2016 Amendment may not be enforced against Plaintiffs' pensions as post-dating Plaintiffs' retirements, should Plaintiffs seek to vacate the stay and leave to file such Supplemental Complaint (*see* Dkt. 110-2 ¶¶ 42) in connection with *Metzgar* II.

Based on these factors the court finds Plaintiffs' motion to file the Proposed Supplemental complaint by injecting additional claims into the instant case at this point in the litigation could unduly delay resolution of the threshold merits of this case thereby prejudicing Defendants and interfering with the early resolution of the instant litigation. *See Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (prejudice arising from delay in disposing of case because of proposed additional claims warrants denial of motion for leave to amend). Finally, based on the foregoing, it is not necessary to address Defendants' alternative contention in opposition to Plaintiffs' motion contending Plaintiffs' proposed supplemental allegations are futile as outside the Plan's contractual 180-period for asserting claims directed to Defendants' August 2016 Amendment. Accordingly, Plaintiffs' motion for leave to file the Proposed Supplemental Complaint (Dkt. 110) should be DENIED.

III.    <u>Preliminary Injunction</u>.

As noted, Background, *supra*, at 4, Plaintiffs also move, by papers filed February

1, 2018, pursuant to Fed.R.Civ.P. 65(a) ("Rule 65(a)") for a preliminary injunction

enjoining Defendants from any reduction of Plaintiffs' Special Early Retirement monthly

pension benefits ("Plaintiffs' Motion for Preliminary Injunction" or "Plaintiffs' motion").

The basis for Plaintiffs' motion is that beginning in January 2017 Defendants have

reduced Plaintiffs' monthly pension payments by 100% of the January 2017 payments

and thereafter by 25% (except for Plaintiff Metzgar who has continued employment with

his former employer since January 2012 when Defendants suspended Plaintiffs' Special

Early Retirement pensions but who will also become eligible for such pension payments

upon attaining age 65) until Plaintiffs terminated their continued employment or reached

age 65 which pensions Defendants had determined in December 2011 were approved

in violation of § 401(a).  Also, as noted, Facts, *supra*, at 12-13, Defendants' 2011

Determination is the subject of Plaintiffs' and Defendants' motions for summary

judgment addressing whether Defendants' 2011 Determination constitutes a violation of

Plaintiffs' rights under ERISA § 204(g) (anti-cutback rule), ERISA § 502(a)(1)(B)

(authorizing beneficiary recovery of benefits wrongfully denied) and ERISA § 1104(a)(1)

(breach of fiduciary duty).  Thus, whether Defendants' subsequent decision to recoup,

commencing in January 2017, the pensions erroneously paid to Plaintiffs up to January

2012 by partially reducing Plaintiffs' pension payments, as Defendants maintain, was

lawful under ERISA thereby supporting Plaintiffs' request for preliminary injunction,

turns on whether Defendants' underlying decision in December 2011 to suspend such

pension payments to bring the Plan into compliance with § 401(a) was lawful.  As

discussed, Discussion, *supra*, at 54-61, although Plaintiffs' motion for leave to serve a

supplemental pleading pursuant to Rule 15(d) has been denied, the court finds Plaintiffs' claims as alleged in this action, *Metzgar* I, provides a sufficient basis to support Plaintiffs' motion for preliminary injunctive relief if the other prerequisites for Plaintiffs' motion have been satisfied. Specifically, if Defendants' suspensions of Plaintiffs' pensions in 2012, as illegally approved by Defendants, were improper under § 204(g), then Plaintiffs would have been entitled to continue to receive their pensions without set-off to the present time and Defendants would have no legal basis for recouping beginning in 2017 the amount of Plaintiffs' pensions received by Plaintiffs to January 2012. Thus, the threshold issue of the basic validity of Defendants' actions against Plaintiffs as challenged in this case provide a sufficient basis upon which Plaintiffs may seek preliminary injunctive relief to attempt further to avoid adverse consequences, *i.e.*, reduced pension payments.

The criteria for granting a temporary restraining order pursuant to Fed.R.Civ.P. 65(b) ("Rule 65(b)") or a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) ("Rule 65(a)") are the same. *Neopost USA, Inc. v. McCabe*, 2011 WL 4368447, *3 (D.Conn. Sep't 19, 2011) (quoting *Citigroup Global Markets, Inc. v. VCG Opportunities Master Fund Limited*, 598 F.3d 30, 35 (2d Cir. 2010). A party seeking either form of preliminary equitable relief must "show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Global Markets, Inc.*, 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). The injunctive relief requested must also be shown to be "'in the public interest.'" *Carlson v. Medco Health Solutions, Inc.*, 2011 WL 3800017, *4 (W.D.N.Y. Aug. 29,

2011) (Arcara, J.) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). It is "well-settled" that a showing of irreparable harm is a prerequisite for relief pursuant to both Rule 65(a) and 65(b). *Neopost USA, Inc.*, 2011 WL 4368447, *3. To qualify as irreparable, the requisite harm must be "actual and imminent, not remote and speculative, and not adequately compensable by money damages." *Id.* (citing cases). The party seeking injunctive relief carries the burden of establishing each of these factors by a preponderance of the evidence. *Carlson,* 2011 WL 3800017, *4 (citing *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F.Supp.2d 339, 344 (S.D.N.Y. 2008)). "The irreparable harm requirement is the most important factor in determining whether preliminary injunct[ive] [relief] should issue." *Chapman v. South Buffalo Railway Company*, 43 F.Supp.2d 312, 318 (W.D.N.Y. 1999) (Arcara, J.). Moreover, absent "a showing of irreparable harm, it is not necessary to examine the second prong of the preliminary injunction requirements," *i.e.*, likelihood of success or the presence of serious questions together with a balance of hardship in movant's favor. *Id.* at 318 (citing *Shady v. Tyson*, 5 F.Supp.2d 102, 109 (E.D.N.Y. 1998)).

As noted, it is established Second Circuit law that "[a] showing of irreparable harm is essential to the issuance of preliminary injunction." *See Sperry Int'l Trade, Inc. v. Government of Israel*, 670 F.2d 8, 11-12 (2d Cir. 1982). To establish irreparable harm, the movant must demonstrate 'an injury that is neither remote nor speculative but actual and imminent' and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2nd Cir. 1989)). *See also Wright v. New York State Dep't. of Corrections*, 568 Fed.Appx. 53 (2d Cir. 2014) (quoting *Shapiro*, 51 F.3d at 332); Wright Miller Kamer Marcus Spencer Steinman, FED.

PROC. & PRAC. § 2348.1 (3d ed.) ("[A] preliminary injunction usually will be denied if it appears that the applicant has an adequate alternate remedy in the form of money damages or other relief.") (citing cases). An exception to this general rule arises where there is a risk that the movant will become insolvent prior collection of a judgment in the movant's favor. *Id.* (citing *Brenntag Intern'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999). Here, however, none of the Plaintiffs aver that in the absence of a preliminary injunction to prevent Defendants from any further reduction of Plaintiffs pension payments, Plaintiffs will suffer insolvency. At most, Plaintiffs Metzgar, Mueller, Noble, O'Callaghan, K. Reagan, and Puglia, *see* Affirmation of Matthew K. Pelkey, Esq., Dkt. 111-2 ¶ 20, (referencing Affidavits of Plaintiffs Metzgar, Mueller, Noble, O'Callaghan, Kevin Regan, and Puglia, filed in support of Plaintiffs motion for a preliminary injunction), state that Defendants' actions have resulted in a "significant financial hardship." *See* Metzgar Affidavit (Dkt. 111-18 ¶ 34); Mueller Affidavit (Dkt. 111-9 ¶ 29); Noble Affidavit (Dkt. 111-10 ¶ 28); O'Callaghan Affidavit (Dkt. 111-11 ¶ 30); K. Reagan Affidavit (Dkt. 111-12 ¶ 27); Puglia Affidavit (Dkt. 111-14 ¶ 28).[16] Each Plaintiff also asserted that based their respective ages, 63-71, and further expected lengthy proceedings to obtain complete financial relief in this case, he "may suffer harm that cannot be compensated by money damages." *See, e.g.,* Dkt. 111-18 ¶ 34 (Metzgar Affidavit dated January 25, 2018). Thus, Plaintiffs do not demonstrate that absent preliminary injunctive relief Plaintiffs will suffer insolvency and that such a result is "actual and imminent." *Neopost USA, Inc.*, 2011 WL 4368447 at *3. Accordingly,

---

[16] Plaintiff Metzgar also avers that the loss of his pension in January 2012 and the anticipated reduction by Defendants in his pension payments when his pension resumes at age 65, in April 2019, has and will result in "significant financial hardship." Dkt. 111-8 ¶ 28.

Plaintiffs fail to satisfy the threshold prerequisite of irreparable harm, and Plaintiffs' motion, Dkt. 111, should therefore be DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment (Dkt. 98) should be GRANTED; Plaintiffs' motion for summary judgment (Dkt. 101) should be DENIED; Plaintiffs' motion for leave to file a Supplemental Complaint (Dkt. 110) is DENIED; Defendants' motion to dismiss the Counterclaims (Dkt. 116) should be GRANTED; Plaintiffs' motion for preliminary injunction (Dkt. 111) should be DENIED. The Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

As to Plaintiffs' Motion for Leave
to File a Supplemental Complaint
(Dkt. 110), Plaintiffs motion is
DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:   March 28, 2019
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    March 28, 2019
             Buffalo, New York